# Man sues St. Paul police over alleged beating

## ■ Claims he was attacked, chained to hospital bed

MOLLY GUTHREY STAFF WRITER

A St. Paul man is suing the city of St. Paul as well as three St. Paul police officers, saying that he was beaten during a traffic stop in January.

David Edward Ellis is alleging civil rights violations, assault and battery, false imprisonment, police use of excessive force and in-

fliction of emotional distress in the lawsuit filed Friday in U.S. District Court in St. Paul.

St. Paul Police Chief William Finney referred calls to the St. Paul city attorney's office, but efforts to reach attorneys handling the case late Wednesday afternoon were unsuccessful.

In the lawsuit, Ellis says a police officer stopped him after he pulled into the SuperAmerica on Seventh and Wall streets in St. Paul on Jan. 31. According to the lawsuit, the officer was upset that Ellis questioned why he was being stopped.

The officer "physically attacked Plaintiff David Ellis while he was peaceably standing in accordance with the officer's command against his car with his hands on his head," the suit alleges. Ellis also said the officer sprayed mace in his face.

During the incident, Ellis said another police officer arrived and both officers beat him as he was handcuffed and lying on the ground. He also said another officer arrived at the scene and "could be heard demanding a halt to the attack."

Ellis said he also was treated

improperly at the hospital, where he was handcuffed to a bed and "forced to wait a couple of hours" before he was treated for his injuries.

He said he was not allowed to call his wife to discuss his treatment options after a doctor told him "that he had blood on his brain sac and that the hospital wanted to put him on an intravenous treatment to prevent a coma." Instead, he was handcuffed to a bedpost again for a couple of hours before he was allowed to call home.

---

# St. Paul council passes rental inspections policy

## ■ Measure would make checks routine; mayor threatens veto

ANN BAKER STAFF WRITER

Ignoring a threatened mayoral veto, the St. Paul City Council approved a regular inspections policy for rented houses and duplexes by a vote of 4-2 with one abstention. The startup date for owners to obtain certificates of occupancy is March.

Mayor Norm Coleman, who is on vacation, intends to veto the ordinance, said Deputy Mayor Tim Marx. It would be Coleman's fourth veto in nearly four years.

"The mayor supports the goals to ensure that quality of housing increases and intends to have a program by the end of the year," mayoral aide Peter Hames told the council. The problems, he said, were potential costs and the mayor's preference for inspections based on complaints.

"I'd be sorry to see the mayor

veto an effort to turn around substandard houses in the city," said Council Member Bobbi Megard, who introduced the measure. "We are taking houses down week after week. This ordinance is trying to get ahead of that."

Co-sponsor Council Member Dan Bostrom said, "We've been waiting a long time to deal with this. These are businesses."

An amendment from an earlier proposal calls for inspectors to give priority to properties that have a history of complaints and

noncompliance. Another amendment schedules routine inspections every four years instead of every two. It may take 10 years to get the program up to speed.

Opposing votes came from Council Member Jerry Blakey, who fears the program will back fire and lead to more demolitions and homelessness, and Council Member Mike Harris, who said i would impose overly strict standards for aging properties that may be adequate, if not up code.

---

PHA 011363

---

**IEFING**

king ramp with city aid of $15 ...ion in tax increment financing, ...ch will be furnished in the ...n of a loan from the company ...he relatively high interest of ...percent. The council unani- ...isly approved the deal in late ...ober.

**efighters find marijuana**

. Paul firefighters responded ...house fire that turned out to ...drug bust Tuesday night at ...Reaney Ave., police said. ...occupant of the house, gone ...the fire department arrived, ...d 911 to report the blaze. It ...tarted in a wall above an ...rical panel in the kitchen at ...11:25 p.m., fire investigator ...e Novak said.

...hen we got there, no one was ...d," he said.

...utes later, firefighters ...ered 107 marijuana plants ...basement, Novak said. ...were notified and came to ...cate the indoor marijuana ...and accompanying drug ...hernalia.

...fire, which caused an ...ted $25,000 in damage, ...have been caused by a ...overload related to the ...ighting and heating ...tus necessary to cultivate ...rijuana, he added. ...e were still investigating ...day afternoon, but were ...the owner or renter of the ...y for possible charges.

**jury indicts man**

year-old St. Paul man was

SAINT PAUL PIONEER PRESS

WEDNESDAY, NOVEMBER 12, 1997

ST. PAUL PIONEER PRESS

LETTERS TO THE EDITOR
345 Cedar St.
St. Paul, Minn. 55101

FAX TO: LETTERS TO THE EDITOR
Fax Number: 612-228-5564
Internet: letters @ pioneerpress.com

We welcome your letters. Make them exclusive to us. Please provide a full signature, city of
residence and (for verification) your address and daytime phone. Preference goes to
letters under 225 words. All letters are subject to editing. No more than one letter per
writer every 60 days. Direct questions to 228-5545.

Publisher/President
Editor/Sr. Vice President
RK Editorial Page Editor
ER Managing Editor
Associate Editorial Editor

ER JR. Chairman Emeritus

# OPINION



TIM BRINTON

# HouseHold

**The St. Paul City Council considers today whether to require rental properties of fewer than three units — single-family homes and duplexes — to undergo the same inspections as higher-occupancy properties.**

## PRO: Measure would help halt slide of buildings, neighborhoods, tax base

**ROBERTA MEGARD**
GUEST COLUMNIST

St. Paul's City Council today is to consider adopting an ordinance to require regular inspections for single-family houses and duplexes. Currently, St. Paul requires these certificate of occupancy inspections for rental properties of three units and larger. Houses and duplexes are inspected only if someone calls with a complaint.

Some landlords are asking, Why add government regulations to the smaller rental industry? Because in neighborhoods across the city, we see serious deterioration of rental property.

The facts:

■ Every week the City Council must act on demolition orders and tell property owners to remove or repair their vacant buildings or the city will demolish them.

■ Since 1991, more than 500 houses have been demolished.

■ Each year the city's vacant building list contains more than 400 buildings, despite years of effort to address vacant properties. Most of these buildings are vacant because they were allowed to deteriorate.

■ There are an estimated 600 vacant lots in the city. These lots formerly held houses, which brought in property taxes. With demolition or deterioration, the value drops and other properties must pay more property taxes to compensate.

■ Half the city's chronic problem properties are rental.

■ Rental units are 17 percent of the city's single-family and duplex properties, but generate approximately 50 percent of the complaints.

The complaint-based system is not sufficient. First, a significant number of tenants won't complain because they fear retribu-

tion, including eviction, from their landlords. This is especially true around colleges, where there is a great demand for rental housing. But it is also true whenever demand exceeds supply, as we are beginning to see throughout the metropolitan region.

Second, while the city can order a repair, the punishment is often a minor fine. If a certificate of occupancy is required, landlords could be prevented from renting until the necessary repairs are made. This provides an economic incentive to repair the property quickly.

Third, the complaint may come so late in the deterioration process that demolition makes more economic sense than repair.

The certificate of occupancy requirement sets a community standard: Landlords who run a business will need to keep their properties up to code. The requirement, to keep properties in compliance with the city's current property maintenance and fire codes, is not onerous, and enforcement of these codes ensures safe, sanitary, sound housing for tenants. They reduce blight and improve the quality of life in neighborhoods.

For this certificate of occupancy pro-

gram to improve the city's housing stock, the city needs to work with landlords to bring properties into compliance. Funds will be needed to make required repairs.

Fortunately, landlords will see a reduction in their property taxes next year due to legislative changes in the tax rates. For example, a rental house valued at $100,000 should pay $625 less in 1998 than in 1997. Presumably landlords will use these dollars for repairs. In addition, there is City Council support for a loan program for repairs using neighborhood sales tax proceeds.

Based on past experience with larger rental properties, we also anticipate that inspected residential properties will have a lower fire loss than noninspected properties.

For more than 10 years, city plans have recommended considering an expanded certificate of occupancy program to prevent housing deterioration. We can't wait any longer, for as housing deteriorates, the city's tax base falls. Farmers would tell us we are eating our seed corn.

*Megard is a St. Paul City Council member and co-sponsor of the proposal.*

## CON: Plan would punish widely and still miss the problems targeted

**CAROL BUCHE AND PAUL SCHMIDT**
GUEST COLUMNISTS

The proposal to mandate regular inspections of every nonhomesteaded single-family and duplex home in the city unfairly burdens all St. Paul citizens and will not resolve specific concerns.

The proposal would increase regulation, bureaucracy and city costs; burden an already overladen inspection system; raise rents, discourage investment in the city and intrude on tenants' quiet enjoyment of their homes; and discriminate against renters and rental property.

Consider the following perceptions and reality.

**Perception:** All landlords are rich. All rent money simply lines the pockets of the owners. Landlords will not maintain their rental properties unless they are forced to

do so. The Minnesota Legislature just authorized a large tax break for rental properties.

**Reality:** Most rental property owners are small-business people who are struggling to make ends meet. Most rental properties in the Twin Cities have very slim profit margins and have incomes that barely allow for repair of tenant-caused damage and basic maintenance, let alone improvements and aesthetics. The properties affected by this ordinance will receive a negligible reduction in tax rate (only about 7 percent).

**Perception:** This ordinance will reduce the number of condemned and demolished buildings, thus helping maintain safe, livable housing in St. Paul.

**Reality:** The financial burden of costly repairs cannot be met by many rental property owners and would likely result in

an increase in the number of abandoned properties. The increased cost due to inspections and code compliance will result in higher rents, which will decrease the number of affordable housing units for moderate- to low-income tenants.

**Perception:** This ordinance will decrease the number of "problem properties" that have a negative impact on neighborhoods.

**Reality:** "Problem properties" are caused by many factors, very few of which are addressed by the Building Maintenance Code. The code does not address behavior problems of tenants, such as loud parties, unruly guests and drug activity. The code does not address aesthetics such as landscaping, paint color or mismatched siding. Code enforcement may result in no visible change to the exterior of the building.

**Perception:** The existing complaint-based system is not working.

**Reality:** The existing system is not being properly utilized. The complaint-based system is a better use of city money because it focuses resources on the small percentage of problems, rather than wasting them on the thousands of properties where

enforcement is unnecessary. The specter of intimidation and retaliation by landlords is inflated and discriminatory. A recent survey of renters in the Twin Cities indicated a high rate of satisfaction with landlords and apartments.

Please don't automatically demonize a neighboring property owner as an uncaring "absentee landlord." Make an effort to meet them as friends and neighbors. Include them as members of the community. Don't assume that owners are aware of everything that goes on at their properties. Inform them of problems before they get out of hand. (Ownership of rental property is supposed to be posted at the property.)

The St. Paul Association of Responsible Landlords has been gratified by the support and encouragement that we have received from many city departments and their employees, and from the City Council. With an attitude of trust and respect, we intend to continue working with the city toward our common goals.

*Buche is president and Schmidt vice president of the St. Paul Association of Responsible Landlords.*

PHA 011390

| | |
|---|---|
| **From:** | Jon Gutzmann |
| **To:** | Lesch, John |
| **Date:** | 9/19/00 3:48PM |
| **Subject:** | Re: Section 8 Inspection |

Hi John.

The general answer is that Section 8 Housing Quality Standards (HQS) are a national "minimum standard," if you will, and in Minnesota, are less stringent than our local code in almost every category.

We have actual side by side comparisons of HQS and the St. Paul Code that we prepared a few years ago for Council Member Lantry's various rental housing initiatives. We can send that to you as well as our position paper supporting the use of the more restrictive City Code versus HQS (assuming other the other proposed "Lantry reforms" were made) if you want more detail.

I will likely be on paternity leave by the end of this week, so I will copy this message to Barb Sporlein and Al Hester for our follow up.


>>> "John Lesch" <john.lesch@ci.stpaul.mn.us> 09/18/00 07:13PM >>>
Hello John:

You may remember me from last year. I took Jennifer Billig's job with Chris Coleman. I was wondering if you could help me out with a question. What does the PHA inspection for Section 8 involve? How is it different, or enhanced, from the standard St. Paul housing code requirements?


John Lesch
Legislative Aide to
Councilmember Chris Coleman
(651) 266-8620



**CC:**          Hester, Al;  Sporlein, Barb

PHA 011439

**DEPARTMENT OF FIRE AND SAFETY SERVICES**
*Timothy K. Fuller, Fire Chief*

**DIVISION OF FIRE PREVENTION**
*Steven Zaccard, Fire Marshal*



**CITY OF SAINT PAUL**
*Norm Coleman, Mayor*

*100 East Eleventh Street*
*Saint Paul, MN 55101*

*Telephone: 612-228-6230*
*Facsimile: 612-228-6241*

## M E M O R A N D U M

**TO:** **Housing Coordination Team**

| | | |
|---|---|---|
| Gary Peltier, Chair | Chris Lukesh | Neal Holton |
| Jon Gutzmann | Dick Gardell | Ken Ford |
| Katy Linblad | Pam Hutton | Chuck Votel |

**FROM:** Fire Marshal Steven Zaccard

**DATE:** January 18, 1995

**RE:** **Comparison of Housing Standards**

Attached are the comparisons between the city's Property Maintenance Code (Ch. 34) and the Housing Quality Standards used for Section 8 housing. This was requested of us by the Community and Economic Development Committee. It was faxed to the committee's staffer, Vickie Scheffer, today.

Al Hester and the PHA have to date only had a cursory look at a draft of this, and as such, have only requested minimal changes so far. Please see Al's January 17 memo that is attached.

Of the ninety-four (94) comparisons made, the Housing Quality Standards were:

> less strict.....77 items (82%)
> same............12 items (13%)
> more strict......3 items (3%)
> undetermined.....2 items (2%)

Ironically, two of the three items where the Housing Quality Standards exceeded the Property Maintenance Code were items relating to fire safety. That is because we follow Minnesota Statutes pertaining to fire extinguishers and smoke detectors and the Housing Quality Standards exceed those statutory requirements.

Attachment

PHA 011488

# COMPARISON OF HOUSING STANDARDS

| Exterior Property Areas | St. Paul Property Maintenance Code | Section 8 Standards or Page# | Is Section 8 More or Less Stringent |
|---|---|---|---|
| Sanitation | 34.08(1) Maintained free from any accumulation of garbage, mixed municipal solid wastes, animal feces or refuse. | 8.4 - Not covered | Less |
| Grading/Drainage | 34.08(2) Graded & maintained to minimize accumulation of water. | 10 - Major evidence of flooding or drainage problems | Less |
| Ground Cover | 34.08(3) Maintained to control erosion, dust & mud. | Not covered | Less |
| Extermination | 34.08(4) Owner responsible to exterminate. | Not covered | Less |
| Accessary Structures | 34.08(5) Maintain structurally sound and in good repair. | 10 - Pose serious hazard | Less |
| Outside Storage | 34.08(6) Unlawful to accumulate, to constitute a nuisance or rodent harborage. | 8.4 - No heavy accumulation | Less |
| Parking lots/paving | 34.08(7) All parking spaces shall be paved. | Not covered | Less |
| Refrigerators/ stored containers | 34.08(8) Not without removing the doors, hinges or latches. | Not covered | Less |
| Exterior Lighting | 34.08(9) Exterior lighting at garages & surface parking is required. | Not covered | Less |
| **Exterior Structures** | **St. Paul Property Maintenance Code** | **Section 8 Standards or Page #** | **Is Section 8 More or Less Stringent** |
| Foundations | 34.09(1)(a) Adequately support the building. | 4 - Sound and free from hazards. * | Less |
| Exterior Walls/holes | 34.09(1)(b) Free of holes, breaks, loose or rolling boards or timbers | 5 - Free from hazards * | Less |
| Exterior Walls/painting | 34.09(1)(c) Protected from the elements | 5 - Free from lead based paint* | Less |
| Lead paint | 34.09(1)(d) Shall not be equal or greater than 1/2 of one percent (0.5%) | 6 - Treated adequately or covered | Less |
| Roof | 34.09(1)(e) Tight and without defects | 5 - Unsound or hazardous * | Less |
| Stairs, porches, decks | 34.09(2)(a)(b) Constructed safely and capable of supporting a load determined by the Building Code | 4 & 5 - Free from hazards and does not pose a danger to tenants. | Less |
| Balustrades | 34.09(2)(c) Compliance with Building Code | 4 & 5 - Can have noted defects | Less |
| Handrails | 34.09(2)(b) More than three (3) risers high | 3 - Can have noted defects | Less |

1

PHA 011489

| Windows/sashes | 34.09(3)(b) Substantially tight and in sound condition | 3 - Moderately deteriorated would pass | Less |
|---|---|---|---|
| Window hardware/locks | 34.09(3)C Locks required up to and including second story | 1.4 (63) - Required but can be nailed unless needed for egress and ventilation | Less |
| Screens | 34.09(3)e Required for windows for ventilation and other outside openings used for ventilation | 8.12 or page 10 Windows below fourth floor | Less |
| Basement windows | 34.09(3)d Constructed and maintained to prevent entrance of rodents and rain | Not covered | Less |
| Exterior doors | 34.09(3)F Easily opened from inside without use of key; in good condition | Locking requirements only | Less |
| Dwelling entry door | 34.09(3)i Substantially secure from illegal entry. Self closing fire door | 1.4(62) Good condition & substantial locking arrangement | Less |
| Deadbolt locks | 34.09(3)h 1 inch throw deadbolt required | 2 & 3 - Must be lockable | Less |
| Locks/patio doors | 34.09(3)1 Removable tract and device in upper tract to prevent window from being lifted out | 1.4 - Lockable and secure | Less |

* Would pass unless directly affects unit occupied by tenant.

| Interior Structures | St. Paul Property Maintenance Code | Section 8 Standards or Page # | Is Section 8 More or Less Stringent |
|---|---|---|---|
| Basement/free from dampness | 34.10(1) Maintained reasonably free | Not Covered | Less |
| Structural members | 34.10(2) Maintained structurally sound | 882.109(2) 165 Shall not have serious defects - free of safety hazard | Less |
| Stairs | 34.10(3)a Constructed safely and capable of supporting a load determined by building code.  (Rise/Run) | 882.109(2) 165 Structurally sound | Less |
| Handrails | 34.10(3)b More than three risers high | 6.4  8.6 Four or more risers | Same |
| Sanitation | 34.10(5) Maintained in a clean and sanitary condition | 8.4 Free from heavy accumulation | Less |
| Extermination | 34.10 Owner responsible for extermination | 8.3 Free from infestation | Same |
| Walls/floors | 34.10(7) Maintained in sound condition | 882.109(2) 165 Shall not have serious defects | Less |
| Ceilings/woodwork | 34.10(7) Maintained in sound condition | 882.109(2) Shall not have serious defects | Less |
| Cabinets | 34.10(7) Maintained in sound condition | Generally, shall not have serious defects | Less |
| Lead paint | 34.10(8) Equal to or greater than one-half of one percent (.05%) | 882.109(ii) 166 Compliance with HUD regulations | Undetermined |

2

PHA 011490

| Basic Facilities | St. Paul Property Maintenance Code | Section 8 Standards or Page # | Is Section 8 More or Less Stringent |
|---|---|---|---|
| Toilet/handsink | 34.11(1) Every dwelling unit shall contain | 3 & 4  Must have | Same |
| Bathtub/shower | 34.11(2) Every dwelling unit shall contain | 3 & 4  Must have | Same |
| Bathroom Floor | 34.10(4) Impervious to water | 3.8 Check for severe problems | Less |
| Kitchen Sink | 34.10(3) Required apart from hand sink | 2.12  Required | Same |
| Stove/refrigerator | 34.12(2) If provided, they are required to perform intended function | 3  Required | More |
| Plumbing/sewer/water | 34.11(4) Connected and working | 2.12? 79  Hot & cold water required | Same |
| Water Heater | 34.11(5) Heat water to minimum 120 degrees | 7.4 .14  Assure it does not present hazard | Less |
| Heating Facilities Minimum Temperature of 68 degrees | 34.11(6) Capable of safely and adequately heating | 7.1 (106)  Provide adequate heat | Same |
| Space heaters | 34.11(6) Properly installed, connected, maintained and capable of performing the function it was designed for | 7.2 (108) Venting required | Less |
| Garbage/rubbish Storage & Removal | 34.11(7)(8) Supplied with containers and removal | 8.4 & 8.5  Adequately covered containers | Less |

| Occupancy | St. Paul Property Maintenance Code | Section 8 Standards or Page # | Is Section 8 More or Less Stringent |
|---|---|---|---|
| Minimum ceiling height | 34.13(1)  5 feet and at least 1/2 of floor area 7 feet or more | 882.109(c) No specifics | Less |
| Required space/dwelling unit | 34.13(2)  150 square feet for 1st occupant and 100 square feet for each after that | 882.109(c) Adequate | Less |
| Required space/sleeping room | 34.13(3)  70 square feet 1st occupant, 50 square feet there after | 882.109(c) Adequate | Less |
| Escape window | 34.13(4)  5.7 square feet | 8.2  Page 2  Required; no size | Less |
| Access limitation/commercial areas | 34.3(5)  No habitable room bathroom or toilet room shall open directly into | Not covered | Less |

| Light and Ventilation | St. Paul Property Maintenance Code | Section 8 Standards or Page # | Is Section 8 More or Less Stringent |
|---|---|---|---|
| Window/habitable Room | 34.14(1)(a) At least one openable window | 4.5 (92) Not required except in sleeping rooms | Less |
| Square Feet Natural Light | 34.14(1)(b) 8% of floor area | 3  No specifics | Less |
| Openable Window/kitchen | 34.14(1)(C) Not required if unobstructed opening of 50% of common wall to adjoining is unobstructed | 2.5 (75)  Not required | Less |

3

PHA  011491

| Electric Service | St. Paul Property Maintenance Code | Section 8 Standards or Page # | Is Section 8 More or Less Stringent |
|---|---|---|---|
| Adequacy | 34.14(2)a Meets code | No codes required | Less |
| Outlets Required: Living room | 34.14(2)b 120 square feet or less - two duplex outlets; each 80 additional square feet one duplex outlet | 1.2 two in living room | Less |
| Bathroom | 34.14(2)C Duplex GFCI convenience outlet | 1.2 No outlet required | Less |
| Kitchen - 3 outlets/20 amp | 34.14(2)C Three outlets & at least one supplied by separate twenty (20) | 59 One outlet & light fixture | Less |
| Light Fixture - Hall/closet/bathroom/laundry room/furnace room | 34.14(2)C One electrical light fixture | Adequate light | Same |
| Hallway/stairwell Lighting | 34.14(2)d Shall be adequately lit at all times | 1.2 Adequate light | Same |
| Basement Lighting/switch required | 34.14(2)e Switch required at head of stairs | Not covered | Less |
| **Fire Safety** | **St. Paul Property Maintenance Code** | **Section 8 Standards or Page #** | **Is Section 8 More or Less Stringent** |
| Flammable Liquid Storage | 34.15(1) None at all | Page 111 Not in furnace room | Less |
| Exits Required | 34.15(2) Meet Building Code requirements | 8.2 Alternate fire exit | Less |
| Smoke Detectors | MS 299F.362 Required outside each sleeping area | 10 Same; with requirements for hearing impaired | More |
| **Occupant Responsibility** | **St. Paul Property Maintenance Code** | **Section 8 Standards or Page #** | **Is Section 8 More or Less Stringent** |
| Cleanliness | 34.16(1) Tenant to keep unit in clean & in sanitary condition. | (Information covered in tenant manual) | Undetermined |
| Garbage Disposal | 34.16(2) Tenant shall dispose of all his/her refuse and garbage | Not covered | Less |
| Use and Operation of Supplied Fixtures | 34.16(3) Tenant shall keep supplied fixtures clean and sanitary | Not covered | Less |
| Care of Fixtures Provided by Occupant | 34.16(4) Fixtures furnished by tenant shall be maintained | Not covered | Less |

## ADDITIONAL FIRE REQUIREMENTS ENFORCED IN RESIDENTIAL BUILDINGS

| Exterior | St. Paul Property Maintenance Code | Section 8 Standards or Page # | Are Section 8 Standards More or Less Stringent |
|---|---|---|---|
| Keybox | MUFC 10.302 For keys to gain access to building | Not required | Less |

4

PHA 011492

| Interior | St. Paul Property Maintenance Code | Section 8 Standards or Page # | Are Section 8 Standards More or Less Stringent |
|---|---|---|---|
| Occupancy Separation/mixed | MUFC APP 1A(7)  Provided as specified in the Building Code | Not required | Less |
| Evacuation Planning | LSC 31-6.51  Emergency Instructions shall be provided to each living unit | Not required | Less |

| Fire Alarms/System Equipment | St. Paul Property Maintenance Code | Section 8 Standards or Page # | Are Section 8 Standards More or Less Stringent |
|---|---|---|---|
| Fire Alarm System | MUFC 104(g)  Required for 3 stories or 16+ units | Not required | Less |
| Fire Alarm Testing | MUFC 10.503  As required by Chief | Not required | Less |
| Other System Tests | MUFC 10.504(C)  Quarterly or as required by Chief | Not required | Less |
| Fire Extinguishers | 299F.361  Required more than 3 units | 882.109(3) 166  Fire extinguisher shall be provided for all units | More |
| Fire Extinguisher Servicing | MUFC 10.504(a)  Requires servicing yearly | | Less |

| Exits | St. Paul Property Maintenance Code | Section 8 Standards or Page # | Are Section 8 Standards More or Less Stringent |
|---|---|---|---|
| Number of Exits | MUFC APP(2)  Every floor above the 1st story shall have access to at least two separate exits. | 8.2(119) Meet local or state requirements | Same |
| Exit Obstructions | MUFC 12.104(a)  Shall not be obstructed | 8.2(119) Not obstructed | Same |
| Corridor Rating | MUFC APP 1A(2)(c)  Occupant load of ten or more one hour resistive construction | Not covered | Less |
| Stair Enclosures/chutes | MUFC APP 1A(3)  Enclosed by a minimum of one hour fire resistive construction | Not covered | Less |
| Storage Under Stairways | MUFC 12.109(c)  Prohibited | Not covered | Less |
| Hall and Stairwell Lighting | 34.14(2)(D)  Required 5 foot candles/sq.ft. | Not covered | Less |
| Exit Signs | MUFC 12.111(a)  2 or more exits from story | Not covered | Less |
| Emergency Lighting | MUFC 12.110(a)  Accordance with Building Code | Not covered | Less |
| Emergency Lighting Maintenance | MUFC 12.110(b)  Maintained in operable condition | Not covered | Less |

5

PHA 011493

| Basement/Utilities/ Condemnation | St. Paul Property Maintenance Code | Section 8 Standards or Page # | Are Section 8 Standards More or Less Stringent |
|---|---|---|---|
| Fire Resistive construction/maintenance | MUFC 10.601 Maintained as specified in the Building Code | Not covered | Less |
| Combustible Storage/furnace room | MUFC 11.303(b)(3) No combustible storage in furnace rooms | Same | Same |
| Woodstoves | Installed & maintained to code | Not covered | Less |

| Fire Safety Hi-Rise Requirements | St. Paul Property Maintenance Code | Section 8 Standards of Page # | Are Section 8 Standards More or Less Stringent |
|---|---|---|---|
| Fire Alarm System Test | MUFC 14108(a) Tested in accordance with U.F.C. Standard 14-3 | Not covered | Less |
| Systems Tests | MUFC 10.504(b) Fire & life safety systems to be tested | Not covered | Less |
| Fire Alarm/voice communications | MUFC 14.104(g) and UBC 1807 (d)(e) Accordance with building code requirements | Not covered | Less |
| Fire Exit Drills | LSC 31-1.5.1 Designed in cooperation with local authorities | Not covered | Less |
| Manual Shutdown of Air Handling | NFPA 90-1 Manual shutoff for Fire Department use | Not covered | Less |
| Smoke Control System Tests | MUFC 10.504(a) Shall be maintained & listed in accordance with recognized standards | Not covered | Less |
| Stairwell Unlocking | MUFC APP 1-8 6.11 Unlocked at least every 5th floor level | Not covered | Less |
| Duct Detectors | UBC 1807 (d) Shut down HVAC during fire | Not covered | Less |

6

PHA 011494

## Hester, Al

| | |
|---|---|
| **From:** | Hester, Al |
| **To:** | Gutzmann, Jon M. |
| **Cc:** | Schnitker, Michele M. |
| **Subject:** | Housing Coordination Team Mtg 1/4/95 - HQS and City Codes |
| **Date:** | Thursday, January 05, 1995 9:12AM |

Ken Ford and Gary Peltier reported on the CED Committee planning meeting the previous day -- CED really wants recommendations from HCTm on property standards and inspections. Chuck Votel, Steve Zaccard and Gary Briggs urged that HCTm propose that CED recommend to City Council a resolution urging City and PHA to merge standards into one (City Code). I said that was premature--we don't really know the implications yet. I also reminded them that CED told HCTm to get input from "stakeholders" on any recommendations, and that has not been done. Ken Ford agreed. He suggested a more general recommendation from CED that City and PHA look at ways to combine, eliminate conflicts, etc. I said we'd have to see the language, but the general recommendation was at least better than a more specific one. Votel will do a first draft and send it to us.

Fire Dept has not finished its comparison of code and HQS but will soon. (I reminded Zaccard that PHA wanted to review the draft before it went to CED. He seemed surprised but agreed. I'll call him today.)

The group understood that HUD has to approve HQS variations. Votel (like CSP) quoted the HUD reg/handbook on waivers -- With HUD Filed Office approval, HA may substitute local code for HQS. I repeated that local HUD staff feared more stringent standards would reduce the supply of affordable housing for Sec 8 holders. Votel and others thought the imminent changes in HUD might greatly increase local control. Who knows? They also thought that if the PHA requested a complete substitution and HUD refused, that took the City off the hook (with landlords, I guess).

Stay tuned. We should see the SPFD draft comparison of HQS and code soon, and Votel's draft resolution.

PHA 011789