7420.7 CHG 3

CHAPTER 5

CHAPTER 5. HOUSING QUALITY STANDARDS, UNIT INSPECTIONS, AND ELIGIBLE TYPES OF HOUSING

5-1. CHAPTER OVERVIEW. This Chapter discusses: (a) how a PHA is to determine whether a housing unit selected by a Certificate Holder meets the Housing Quality Standards (HQS) and how the PHA is to make a redetermination of the unit's acceptability at least once each year when an assisted family continues in occupancy; (b) procedures to be used by the PHA for conducting necessary unit inspections; (c) the PHA's responsibilities for establishing internal controls, training inspection personnel, and encouraging owners and families to maintain acceptable housing conditions; and (d) housing types specifically excluded from this program. The applicable regulations are found in Sections 882.109, 882.210(a) and (d), and 882.211.

5-2. APPLICABILITY OF THE HOUSING QUALITY STANDARDS. The HQS set forth in Section 882.109 of the regulations apply to all housing types eligible for the program as discussed in Paragraph 5-7.

5-3. HOUSING QUALITY STANDARDS APPROACH. The development of HQS for program use nationwide is difficult due to the diversity of housing stock characteristics. In an effort to provide guidance to PHAs in determining unit acceptability, the HQS take into account, to the extent possible, regional and/or local variations in housing characteristics. The regulations provide for Field Office approval of variations to the Acceptability Criteria where justified by factors such as local climate, geological conditions, or local codes. For example, manufactured (mobile) home tiedown devices may not be necessary for the occupant's health and safety in geographical areas in a low wind zone. PHAs wishing to establish any variations to the Acceptability Criteria may submit a request to the Field Office. The request must specify the proposed variation and justify its use. Variations which are less restrictive than the Acceptability Criteria must still satisfy the related Performance Requirements. Variations which are more restrictive must not unduly limit the amount and types of available rental housing stock which would otherwise meet HQS and be available at or below the Fair Market Rent (FMR). With Field Office approval, PHAs may substitute local housing codes for the Acceptability Criteria (as long as they meet the Performance Requirements), except for requirements which may be unduly restrictive (e.g., excessive square footage requirements for kitchen counter space). The specific requirements governing unit acceptability determinations are set forth in Section 882.109 of the regulation.

PHA 011796

| 7420.7 CHG 3 | |
|---|---|

CHAPTER 5

The intent of these requirements is to insure the utilization of standard housing units and to establish minimum criteria necessary for the health and safety of the occupants. The regulations state both Performance Requirements (the <u>objective</u> of each standard) and Acceptability Criteria (minimum <u>acceptable</u> level of conditions or performance to meet each standard). The HQS include criteria which can be easily identified as well as criteria which may require a high degree of judgment to apply. Some Acceptability Criteria focus on health and safety concerns and require the PHA to determine unit acceptability <u>regardless of the tenant's possible willingness to accept deficient conditions</u>. Other criteria relate to "decency" and suitability concerns only and, therefore, the unit's acceptability may be determined by the tenant (e.g., amount of kitchen counter space, room size, amount of hot water) with guidance provided by the PHA. The standards also include specific criteria which must be met for manufactured homes, congregate housing, and independent group residences.

5-4. HOUSING QUALITY STANDARDS (HQS).

    a. General. This paragraph contains guidance for both PHAs and tenants in interpreting the HQS found in Section 882.109 of the regulation. It is organized by type of standard and includes:

        (1) Summary of Standards. Provides an annotated summary encompassing both the Performance Requirement and Acceptability Criteria.

        (2) PHA Determination. Discusses how PHAs must interpret the HQS to determine whether or not the unit meets mandatory minimum standards. (NOTE: PHAs must not approve units which do not comply with these requirements).

        (3) Tenant Preference. Discusses areas where the tenant determines the desirability of particular characteristics of the dwelling unit. (NOTE: When the PHA inspection indicates deficiencies with respect to tenant preference items, the PHA should discuss these deficiencies with the prospective tenant. The PHA may also suggest to the owner that the unit be improved. If, after discussion of the deficiencies, the tenant still wishes to lease the unit, the PHA must not deny approval of the unit for items listed under Tenant Preference, unless the PHA has adopted a higher standard approved by HUD.)

    Refer to the Housing Inspection Manual for a more detailed explanation of each standard and additional guidance on interpretation.

6/83        5-2

PHA 011797



# MINUTES
## COMMUNITY AND ECONOMIC DEVELOPMENT COMMITTEE
### OCTOBER 26, 1994

**MEMBERS PRESENT:** Chair Marie Grimm, Councilmember Roberta Megard, Councilmember Jerry Blakey

**ALSO PRESENT:** Mary Ahern, PHA; Carol Buche, Saint Paul Association of Responsible Landlords; Larry Buegler, PED; Neil Esterkin, Nor Management, Inc.; Ken Ford, PED; Al Hester, PHA; Steve Johnson, MN Multi Housing Association; Kent Kreuter, Legislative Aide to Rep. Andy Dawkins; Katy Lindblad, PED; Jane McClure, Highland Villager; Curt Miller, PED; Marcia Moermond, Policy Analyst; Gary Peltier, PED; Caty Royce, Community Stabilization Project; Steven Schachtman, Steven Scott Management; and Maria Somma, Community Stabilization Project.

Chair Grimm called the meeting to order at 10:20 a.m.

### AGENDA
1. Approval of Minutes
2. Section 8 Housing Assistance
3. Residential Property Standards and Enforcement
4. Unified Lending Process and Approval of Guidelines
5. Next Agenda/Adjournment

Councilmember Grimm indicated that the Residential Property Standards and Enforcement portion of the meeting would be laid over to the November 23, 1994, meeting.

### Approval of Minutes

The minutes of March 30, 1994 and August 24, 1994, CED Committee were approved. (3 - 0)

### Section 8 Housing Assistance

Al Hester, Public Housing Agency, indicated Section 8 is a major rent subsidy program administered by HUD to assist low income households in Saint Paul with their rent. While there is no time limit on receipt of Section 8 assistance, the original intent is for people to get on their feet, and not be a permanent means of rental assistance. The average Section 8 recipient receives assistance for about five years.

There are two methods of issuing Section 8 funds, vouchers and certificates. He defined tenant based assistance as a system where individuals apply to the Public Housing Agency for a place on the waiting list. When they come up on that list and establish their financial eligibility, they receive the subsidy. They are then able to look for a property they like and which meets the program requirements. The program also requires the landlord's participation. He indicated that turnover of the certificates and vouchers is very low, and the waiting list which has over 3,000 households presently needing assistance, is closed.

He indicated tenant eligibility is based on the median income of the area (50% of the median income is the upper limit - the average is 25%). There are preferences set by the federal

PHA 011799