

Saint Paul City Council
Minnesota's Capital City

# A STUDY OF REMEDIES FOR CHRONIC PROBLEM PROPERTIES, March 1995

## PURPOSE OF THE REPORT

What is the nature of residential chronic problem properties in Saint Paul, and what is the City doing about them?

What policy options are available to the City to better deal with chronic problem properties?

## FINDINGS

A chronic problem property is a property with which neighbors, neighborhoods and/or the City have struggled over a long period of time, because of property maintenance code violations and possibly criminal activity.

There are approximately 150-250 chronic problem properties in Saint Paul at any given time. A sample of problem properties indicated that 44% were single family houses, 37% were duplexes, and 19% were apartment buildings with three or more units.

Most chronic problem properties have the following characteristics in common: lack of individual responsibility of landlords, owner-occupants and tenants; deteriorating housing structural conditions; lack of maintenance; and declining neighborhood property values.

Problems associated with these properties are attributable in roughly comparable proportions to landlords, tenants, both landlords and tenants, and owner-occupants.

Current City complaint-based enforcement involves a four-phase process: 1) identification of the problem at the neighborhood level; 2) City confirmation of code violation; 3) application of enforcement option(s); and 4) resolution of problem, or further City action.

The enforcement tools, or options available to the City to correct chronic problem properties include warnings, correction notices, summary abatement procedures, citations, and condemnation procedures.

Both the City and the community have programs which act to prevent code violations. These efforts include legal action, community action, proactive enforcement efforts, and financial incentives to do necessary repairs.

Long-term unfinished home improvement projects may create chronic problem properties for neighborhoods. The City can mitigate these problems through more vigorous monitoring of the progress of work for building code violations, requiring a deposit for building permits, and/or more vigorously enforcing the property maintenance code for violations.

## RECOMMENDATIONS

040000

**#1 Implement Rental Registration.** A rental registration program, which requires one and two-unit rental properties to register with the City is recommended. This would not require inspection for registration, but continue the current practice of inspecting one and two-unit rental properties on a complaint basis. Revocation of a registration for repeat code violations, similar to revocation of a Certificate of Occupancy, is an additional option for encouraging code compliance. It would also provide more up to date and accurate data on ownership and management of properties. A modest fee should be required to register these properties.

**#2 Develop a Plan to Require Certificates of Occupancy for All Rental Property.** It is recommended that Rental Registration be the first step in a phased-in process of moving toward a Certificate of Occupancy (C of O) for all rental buildings. This would provide for the systematic inspection of one and two unit residential properties, thereby protecting the health and safety of tenants, and preventing neighborhood deterioration. Because a C of O would require proactive inspection of one and two-unit rental property, a phased-in approach would be the most practical without adding more inspection staff. A number of other measures could mitigate the cost. These include increasing the reinspection fee for C of O covered buildings, and instituting a point system to determine the most appropriate length of time between inspections, so well maintained properties are inspected less frequently, and poorly maintained properties are inspected more often.

**#3 Support a Graduated Fine Structure.** A graduated fine structure may act as a deterrent for future violations. Only 13% of properties receive more than one citation in a year, however, these properties pose huge drains on City resources.

**#4 Strengthen Interdepartmental Communication on Problem Properties.** The City needs a more "automatic" identification process of these properties. Once they are identified, stronger, more coordinated enforcement options should be applied. Also, one or all of the cross-departmental groups working on housing and enforcement issues should be requested to develop recommendations for improved communication and action coordination. There is also the opportunity for broader involvement and action in the identification and mitigation of chronic problem properties citywide. Such involvement could include representatives from tenant associations, landlord associations, realtors groups, district councils and other community organizations.

**#5 Expand Case Management of Problem Properties--Pending Further Study.** Case managing problem properties operates recognizing the multiple problem nature of these properties, and proactively inspects those properties that have a history of code violations.

**#6 Support Landlord and Tenant Education Efforts.** The City should support landlord and tenant education projects as developed by the Family Housing Fund. Further, as the Family Housing Fund's programs become established, the City should explore the use of landlord and tenant education as a sentencing tool for Housing Court.

---

For questions, comments or a copy of the report, please contact <u>Marcia Moermond</u> 651.266.8570

040001

Wot's Snu?  Search  Contact Us  Home

## Saint Paul City Council Research Report

# A Study of Remedies for Chronic Problem Properties

### PURPOSE OF THE REPORT

What is the nature of residential chronic problem properties
in Saint Paul, and what is the City doing about them?

What policy options are available to the City to better
deal with chronic problem properties?

### FINDINGS

- A chronic problem property is a property with which neighbors, neighborhoods and/or the City have struggled over a long period of time, because of property maintenance code violations and possibly criminal activity. (See p. 2-3)

- There are approximately 150-250 chronic problem properties in Saint Paul at any given time. A sample of problem properties indicated that 44% were single family houses, 37% were duplexes, and 19% were apartment buildings with three or more units. (See p. 2, and p. 9.)

- Most chronic problem properties have the following characteristics in common: lack of individual responsibility of landlords, owner-occupants and tenants; deteriorating housing structural conditions; lack of maintenance; and declining neighborhood property values. (See p. 7)

- Problems associated with these properties are attributable in roughly comparable proportions to landlords, tenants, both landlords and tenants, and owner-occupants. (See p. 8)

- Current City complaint-based enforcement involves a four-phase process: 1) identification of the problem at the neighborhood level; 2) City confirmation of code violation; 3) application of enforcement option(s); and 4) resolution of problem, or further City action. (See pp. 12 - 29)

- The enforcement tools, or options available to the City to correct chronic problem properties include warnings, correction notices, summary abatement procedures, citations, and condemnation procedures. (See pp. 19-22)

- Both the City and the community have programs which act to prevent code violations. These efforts include legal action, community action, proactive enforcement efforts, and financial incentives to do necessary repairs. (See pp. 26-29)

- Long-term unfinished home improvement projects may create chronic problem properties for neighborhoods. The City can mitigate these problems through more vigorous monitoring of the progress of work for building code violations, requiring a deposit for building permits, and/or more vigorously enforcing the property maintenance code for violations. (See pp. 41-43)

040002

## RECOMMENDATIONS

*#1 Implement Rental Registration.* A rental registration program, which requires one and two-unit rental properties to register with the City is recommended. This would not require inspection for registration, but continue the current practice of inspecting one and two-unit rental properties on a complaint basis. Revocation of a registration for repeat code violations, similar to revocation of a Certificate of Occupancy, is an additional option for encouraging code compliance. It would also provide more up to date and accurate data on ownership and management of properties. A modest fee should be required to register these properties.

*#2 Develop a Plan to Require Certificates of Occupancy for All Rental Property.* It is recommended that Rental Registration be the first step in a phased-in process of moving toward a Certificate of Occupancy (C of O) for all rental buildings. This would provide for the systematic inspection of one and two unit residential properties, thereby protecting the health and safety of tenants, and preventing neighborhood deterioration. Because a C of O would require proactive inspection of one and two-unit rental property, a phased-in approach would be the most practical without adding more inspection staff. A number of other measures could mitigate the cost. These include increasing the reinspection fee for C of O covered buildings, and instituting a point system to determine the most appropriate length of time between inspections, so well maintained properties are inspected less frequently, and poorly maintained properties are inspected more often.

*#3 Support a Graduated Fine Structure.* A graduated fine structure may act as a deterrent for future violations. Only 13% of properties receive more than one citation in a year, however, these properties pose huge drains on City resources.

*#4 Strengthen Interdepartmental Communication on Problem Properties.* The City needs a more "automatic" identification process of these properties. Once they are identified, stronger, more coordinated enforcement options should be applied. Also, one or all of the cross-departmental groups working on housing and enforcement issues should be requested to develop recommendations for improved communication and action coordination. There is also the opportunity for broader involvement and action in the identification and mitigation of chronic problem properties citywide. Such involvement could include representatives from tenant associations, landlord associations, realtors groups, district councils and other community organizations.

*#5 Expand Case Management of Problem Properties—Pending Further Study.* Case managing problem properties operates recognizing the multiple problem nature of these properties, and proactively inspects those properties that have a history of code violations.

*#6 Support Landlord and Tenant Education Efforts.* The City should support landlord and tenant education projects as developed by the Family Housing Fund. Further, as the Family Housing Fund's programs become established, the City should explore the use of landlord and tenant education as a sentencing tool for Housing Court.

*FOR QUESTIONS, COMMENTS OR A COPY OF THE REPORT*
*PLEASE CONTACT*

Marcia Moermond, Policy Analyst
tel. 266-8570; marcia.moermond@stpaul.gov

040003