CASE 0:05-cv-00461-MJD-SER   Document 231-43   Filed 08/23/08   Page 1 of 40

Home   Residents   Business   Leisure   Mayor   Council   Depts          Search



www.ci.stpaul.mn.us
651-266-8989
**Residents**
**Business**
**Leisure**
**Mayor**
**City Council**
**City Departments**
**NHPI**
  TISH
  Property Owners
  Rental Units
  Vacant Buildings
  Excessive Consumption
**Job Openings**
**Documents and Maps**

# Neighborhood Housing and Property Improvement

## The Division of Property Code Enforcement

**1600 White Bear Avenue North, 651-266-1900**
**at Hillcrest Shopping Center (White Bear Ave. at Iowa Ave.)**

What Property Owners Should Know

NHPI Resources (pdf file)

Rules and Procedures (pdf file)

Year-End Assessment (pdf file)

Truth-in-Sale-of-Housing Program

Vacant Buildings

Distressed Properties

Rental Unit Registration

Excessive Consumption



**Andy Dawkins**
**Director**

### Subscribe to Neighborhood Housing and Property Improvement documents on GovDocs

Neighborhood Housing and Property Improvement (formerly Property Code Enforcement) enforces minimum property maintenance standards on one- and two-family dwellings and exterior properties city-wide. The mission of this division is to keep the city clean, keep its housing habitable, and make neighborhoods the safest and most livable anywhere in Minnesota. NHPI program priorities:

🏠 Investigating citizen complaints and responding to calls for service

🏠 Conducting routine inspection patrols

🏠 Conducting proactive sweeps

🏠 Closing down problem properties

🏠 Enforcing dwelling unit registration provisions

New rules went into effect August 14th, 2002. The time lines for getting your property cleaned up have been shortened considerably. Criminal misdemeanor citations will be issued routinely until property owners get the message that we are cleaning up this city.

The court system has agreed to back up our tags with serious penalties. If we have to come back to a property a third time because you haven't gotten the message, you may very well be facing jail time.

We also have a new unit -- the Problem Property Unit -- consisting of two police officers, an assistant city attorney and a case manager. Using the state nuisance abatement law, community standards will be enforced to shut-down or close-down problem properties.

Code Inspectors are now in uniform and drive City cars. The division's

inspectors help enforce the official rules, regulations, and requirements of the Saint Paul City Code, specifically:

- Chapter 34. - **Property Maintenance Code**
- Chapter 35. - **Rental Disclosure Posting**
- Chapter 39. - **Smoke Detectors**
- Chapter 43. - **Vacant Buildings**
- Chapter 45. - **Nuisance Abatement**
- Chapter 51. - **Dwelling Unit Registration**
- Chapter 113. - **Snow and Ice on Sidewalks**
- Chapter 163. - **Abandoned Vehicles**
- Chapter 189. - **Truth in Sale of Housing**
- Chapter 357. - **Solid Waste Provisions**

Home   Residents   Business   Leisure   Mayor   Council   Depts          Search



www.ci.stpaul.mn.us
651-266-8989

**Residents**

**Business**

**Leisure**

**Mayor**

**City Council**

**City Departments**

**NHPI**

TISH

Property Owners

Rental Units

Vacant Buildings

Excessive Consumption

**Job Openings**

**Documents and Maps**

# Distressed Property

## Subscribe to the Distressed Property List on GovDocs

To find out more about a distressed property, do the following:

1. Call Ramsey County at 651-266-2000 for ownership information.

2. Contact the owner to determine interest in selling.

3. If the owner is interested in selling, or if the owner is not contactable, call Neighborhood Housing and Property Improvement (Tony Novak at 651-266-1941) for specific property information.

**Disclaimer:** The City of Saint Paul makes no claim that this information is accurate. The City is simply providing information as it was given to the City. Further, the City of Saint Paul makes no representations as to whether purchase of the property would be a good or bad investment. Any potential purchaser should exercise due diligence to ascertain all information about the property, such as soil contamination, etc. The City of Saint Paul Neighborhood Housing and Property Improvement will not necessarily have all the information on each property.

No information is currently available. We will have a new distressed list up shortly.

040014

http://www.ci.stpaul.mn.us/depts/code_enforcement/distressed.html                10/9/2003



**The City of Saint Paul**
**Minnesota's Capital City**

My Saint Paul, MN
My Subscriptions
My Profile
Log-In

Saint Paul, MN Home Page

**Search**

[                                                    ] GO ▷

Document Categories

Top Viewed Documents

Affirmative Action & Labor Standards Compliance

Business

City Budget

City Council & Ramsey County Board

Grant/Loan Programs

Housing

Informational Material

Libraries

Licenses/Permits

Mayor's Office

Neighborhoods
   Recreation Centers
   Neighborhood Housing and Property Improvement

Newsletters

Official Publications

Public Safety

Recreation

Request for City Services

Residents

Special Announcements

Visitors

Zoning

# Distressed Properties

### Subscribe to receive new editions of Distressed Properties by e-mail

## Description

A monthly listing of distressed properties in Saint Paul.  Maintained by Neighborhood Housing and Property Improvement.

## Editions

| Date | Description | Format | View | E-mail |
|------|-------------|--------|------|--------|
| 12/31/2002 | | PDF (11K) | 📄 | ✉ |

**Legend**

📄 = View edition now.

✉ = Request an e-mail copy of edition.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## Subscribe

Send me e-mail when new Distressed Properties editions are published.  GO ▷

Help  -  Privacy Statement

040015

**Neighborhood Housing and Property Improvement**
**Distressed List**
**December 2002**

| File No. | Address | Ward | Census Tract | Building Type |
|---|---|---|---|---|
| 02-01 | 910 6th Street East | 7 | 33100 | R-Duplex |
| 02-05 | 267-269 Bates | 7 | 34400 | R-Duplex |
| 02-07 | 959 Euclid | 7 | 34500 | R-Single Family |
| 02-29 | 489 Bay | 2 | 36800 | R-Duplex |
| 02-34 | 418 Blair | 1 | 32600 | R-Duplex |
| 03-35 | 718 Sherburne | 1 | 32500 | R-Duplex |
| 02-36 | 1072-1074 Kingsford | 6 | 31801 | R-Single Family |
| 02-37 | 1654 Sherburne | 4 | 32000 | R-Duplex |
| 02-39 | 670 Edmund | 1 | 32500 | R-Single Family |
| 02-41 | 687 Edmund | 1 | 32500 | R-Duplex |
| 02-42 | 699 Edmund | 1 | 32500 | R-Duplex |
| 02-43 | 654 Edmund | 1 | 32500 | R-Single Family |
| 02-50 | 1102 Sylvan | 5 | 30500 | R-Duplex |
| 02-51 | 1560 Western Avenue North | 5 | 30400 | R-Single Family |
| 02-52 | 5 Jessamine Avenue East | 5 | 20500 | R-Duplex |
| 02-53 | 944 Euclid | 7 | 34500 | R-Single Family |
| 02-55 | 930 Duchess | 6 | 31600 | R-Single Family |
| 02-56 | 928 Marion | 5 | 31300 | R-Duplex |
| 02-57 | 2044 Idaho | 6 | 30702 | R-Single Family |
| 02-58 | 1235 Margaret | 7 | 34601 | R-Single Family |
| 02-62 | 1024 Euclid | 7 | 34500 | R-Duplex |
| 02-63 | 756 Juno | 2 | 36800 | R-Single Family |
| 02-64 | 1293 Birmingham | 6 | 30704 | R-Single Family |

| 02-65 | 719 Sherburne | 1 | 32500 | R-Duplex |
| 02-66 | 598 Western North | 1 | 32700 | R-Single Family |
| 02-67 | 271 Maria | 7 | 34400 | R-Duplex |
| 02-68 | 523 Western North | 1 | 32600 | R-Single Family |
| 02-69 | 390 Lafond | 1 | 32600 | R-Duplex |
| 02-70 | 790 Edmund | 1 | 32500 | R-Duplex |
| 02-71 | 686 Sherburne | 1 | 32500 | R-Duplex |
| 02-72 | 118 Litchfield | 5 | 31400 | R-Duplex |
| 02-73 | 1014 Edgerton | 6 | 31000 | R-Duplex |
| 02-74 | 1016 Bush | 7 | 31700 | R-Single Family |
| 02-75 | 2130 Ivy Avenue East | 6 | 30702 | R-Single Family |
| 02-76 | 953 Wilson | 7 | 34500 | R-Duplex |
| 02-77 | 972 5th Street East | 7 | 34500 | R-Single Family |
| 02-79 | 604 Edmund | 1 | 32600 | R-Single Family |
| 02-80 | 483 Sherburne | 7 | 32600 | R-Single Family |
| 02-81 | 672 Edmund | 1 | 32500 | R-Duplex |
| 02-82 | 865 Lafond | 1 | 32400 | R-Single Family |
| 02-83 | 920 Case | 6 | 31600 | R-Single Family |
|  |  |  |  |  |

Home   Residents   Business   Leisure   Mayor   Council   Depts          Search



www.ci.stpaul.mn.us
651-266-8989

**Residents**

**Business**

**Leisure**

**Mayor**

**City Council**

**City Departments**

**NHPI**

TISH

Property Owners

Rental Units

Vacant Buildings

Excessive Consumption

**Job Openings**

**Documents and Maps**

# Vacant Buildings

Truth-in-Sale of Housing Program • What Property Owners Should Know
Rental Unit Registration • Excessive Consumption

## Subscribe to the <u>Vacant Buildings</u> on GovDocs

## REGISTERED VACANT BUILDINGS

The City of Saint Paul has ordinances regulating vacant and unoccupied structures. Property owners must register these buildings with the Division of Code Enforcement if the building is unoccupied and:

1. Unsecured, or
2. Secured by other than normal means, or
3. A dangerous structure, or
4. Condemned, or
5. Has multiple housing or Building Code violations, or
6. Is condemned and illegally occupied, or
7. Is unoccupied for a period of time longer than one year during which time the Enforcement Officer has issued an order to correct nuisance conditions.

**Registration Requirements** - What property owners must do to comply with the law

1. Submit a Vacant Building Registration Form within 30 days, describing plans for rehabilitating and reoccupying or demolishing the building.
2. Disclose all pertinent ownership information.
3. Disclose all pertinent lienholders.
4. Disclose any current Truth-in-Sale of Housing Disclosure Reports.
5. Pay an annual Vacant Building Registration fee of $200.00 within 30 days of receiving this letter.

> **NOTE:** If the building is vacant due to a fire, the owners have 90 days to pay the Vacant Building fee, provided they submit the Vacant Building Registration Form within 30 days informing us of their plans for the building.

6. Provide unencumbered access to all portions of the premises of the buildings to permit the Enforcement Officer to make a complete inspection.

Owners, agents, assignees and all responsible parties are required to comply with the following requirements of the Saint Paul Legislative Code:

1. Keep all buildings secure.
2. Keep all porches, stairs, and exterior premises free of refuse, junk and debris.
3. Cut grass and weeds.
4. Remove snow and ice from sidewalks.

040018

## Vacant buildings in Saint Paul sorted by Ward:

- [Ward 1](#)
- [Ward 2](#)
- [Ward 3](#)
- [Ward 4](#)
- [Ward 5](#)
- [Ward 6](#)
- [Ward 7](#)
- We also have a list of all vacant buildings.

**What's New?    Search    Site Index    Policies & Practices    Contact Us    Home**

040019



Home   Residents   Business   Leisure   Mayor   Council   Depts                    Search

www.ci.stpaul.mn.us
651-266-8989
Residents
Business
Leisure
Mayor
City Council
City Departments
**Neigh Hsg & Prop Imp**
How-to Guide
Rules & Procedures (pdf)
Truth in Sale of Housing
Rental Units
Vacant Buildings
City Job Openings
Documents and Maps

# Neighborhood Housing and Property Improvement

## The Division of Property Code Enforcement

### 1600 White Bear Avenue North, 651-266-1900
### at Hillcrest Shopping Center (White Bear Ave. at Iowa Ave.)

What Property Owners Should Know

NHPI Protocols (your how-to guide)

NHPI Resources (pdf file)

Rules and Procedures (pdf file)

2003 Year-End Assessment (pdf file)

NEW! - Look up Property Info and
    follow permit progress

Truth-in-Sale-of-Housing Program
-- New Evaluator Test, Feb. 24, 2004

Vacant Buildings

Distressed Properties

Rental Unit Registration


Look up


**Andy Dawkins**
**Director**

Subscribe to **Neighborhood Housing and Property Improvement documents** on *GovDocs*

Neighborhood Housing and Property Improvement (formerly Property Code Enforcement) enforces minimum property maintenance standards on one- and two-family dwellings and exterior properties city-wide. The mission of this division is to keep the city clean, keep its housing habitable, and make neighborhoods the safest and most livable anywhere in Minnesota. NHPI program priorities:

- Investigating citizen complaints and responding to calls for service

- Conducting routine inspection patrols

- Conducting proactive sweeps

- Closing down problem properties

- Enforcing dwelling unit registration provisions

New rules went into effect August 14th, 2002. The time lines for getting your property cleaned up have been shortened considerably. Criminal misdemeanor citations will be issued routinely until property owners get the message that we are cleaning up this city.

The court system has agreed to back up our tags with serious penalties. If we

have to come back to a property a third time because you haven't gotten the message, you may very well be facing jail time.

We also have a new unit -- the Problem Property Unit -- consisting of two police officers, an assistant city attorney and a case manager. Using the state nuisance abatement law, community standards will be enforced to shut-down or close-down problem properties.

Code Inspectors are now in uniform and drive City cars. The division's inspectors help enforce the official rules, regulations, and requirements of the Saint Paul City Code, specifically:

- Chapter 34. - **Property Maintenance Code**

- Chapter 35. - **Rental Disclosure Posting**

- Chapter 39. - **Smoke Detectors**

- Chapter 43. - **Vacant Buildings**

- Chapter 45. - **Nuisance Abatement**

- Chapter 51. - **Dwelling Unit Registration**

- Chapter 113. - **Snow and Ice on Sidewalks**

- Chapter 163. - **Abandoned Vehicles**

- Chapter 189. - **Truth in Sale of Housing**

- Chapter 357. - **Solid Waste Provisions**

040021

Home   Residents   Business   Leisure   Mayor   Council   Depts          Search



www.ci.stpaul.mn.us
651-266-8989

Residents

Business

Leisure

Mayor

City Council

City Departments

**Neigh Hsg & Prop Imp**

  How-to Guide

  Rules & Procedures (pdf)

  Truth in Sale of Housing

  Rental Units

  Vacant Buildings

City Job Openings

Documents and Maps

# Neighborhood Housing and Property Improvement

For complaints about a dwelling of three or more units, contact Fire Prevention at 651-228-6230.

## How to make a housing complaint

**This is a how-to guide** for residents to work with the City's Department of Neighborhood Housing and Property Improvement (NHPI), formerly known as Code Enforcement.

How to shut down problem properties

How to get action and track progress on routine code enforcement cases

How to get a "Sweep" of your neighborhood

Notes for tenants and landlords

## Problem Properties Protocol

**A problem property** is best defined by simply saying: If you live next door to a problem property you know it! Constant calls to get rid of the junk, intolerable behavior by occupants and guests, etc. A problem property can be a rental property or an owner occupied property; it can be a commercial property or a residential property; it can be a single-family unit, a duplex or an apartment building.

### Step 1

Exhaust usual procedures such as calling the Police for police issues, calling Code Enforcement for routine code matters, calling Animal Control for animal control matters, visiting with the problem neighbor (if not too dangerous), calling the landlord, enlisting the help of your block club or district council, going to the Dispute Resolution Center, etc. Anonymous calls to the Police to come to an intersection are not as helpful as giving your name and providing a specific address that needs responding to.

### Step 2

If the problems persist, call Andy Dawkins directly at 651-266-1927. Andy is the Director of Neighborhood Housing and Property Improvement and the administrator of the Problem Property Unit. The Problem Property Unit consists of two Police Officers, an Assistant City Attorney, and two Inspectors.

### Step 3

Andy assigns a Police Officer to do a preliminary investigation. We gather all the information we can on the property. We check City records, including the Police Department, the FORCE Unit, the Fire Department, Animal Control, Code Enforcement and Rental Registration. We interview the neighbors and the local beat cops. We send an inspector to check for code issues.

## Step 4

The unit meets every two weeks and decides which cases to open and which to reject. To open a case we need to tie the nuisance behavior to the occupants or owner. We need to have solid information that will stand-up in court. Generally, we notify the property owner and attempt to get cooperation on solving the problem. At any one point in time we can designate 25 problem properties to get full police attention whenever dispatched to that address. In other words, the officer responding is asked to take the time to identify and interview all the individuals involved in an attempt to tie the alleged nuisance behavior to the occupant of a specific address. Anonymous calls to come to an intersection are not as helpful as giving your name and providing a specific address that needs responding to.

## Step 5

The unit determines which strategy to employ to stop the nuisance activity or close the property down. Is it a landlord/tenant property or owner-occupied? Are the tenants part of the problem? If it's an apartment building we have to work with Fire Prevention Certificate of Occupancy program. If it's a commercial structure we have to work with the Licensing Inspection & Environmental Protection Department.

Here are the strategies we're currently using to stop the nuisance activity or close the property down:

| For owner-occupied properties | For rental 1- or 2-unit properties |
|---|---|
| 1) Code enforcement orders to correct or abate. | 1) Code enforcement orders to correct or abate. |
| 2) Condemnation/vacant building registration. | 2) Condemnation/vacant building registration. |
| 3) Criminal charges a | 3) Criminal charges a |
| 4) Charging for excessive consumption b | 4) Charging for excessive consumption b |
| 5) Sec. 45.04 nuisance abatement order c | 5) Sec. 45.04 nuisance abatement order c |
| 6) Sec. 617.80 nuisance abatement order d [This law also applies to commercial properties and apartment buildings] | 6) Sec. 617.80 nuisance abatement order d [This law also applies to commercial properties and apartment buildings] |
| | 7) Rental Registration Revocation e |
| | 8) City Attorney initiated evictions f [This also applies to apartment buildings] |
| | 9) City-Initiated Tenant Remedies Actions g [This also applies to apartment buildings and vacant former dwellings] |
| | 10) Real Estate Seizures h [This also applies to apartment buildings] |

**Notes**

a. For problem properties we issue criminal charges (otherwise known as "tagging") on the very first instance we observe a violation. See Rules and Procedures, (pdf file) Section IV.B., for Neighborhood Housing and Property Improvement's entire tagging policy, and Section V. for the court-adopted "sanctions schedule."

b. This is a new tool the City Council just gave us that goes in effect January 1, 2004. If code inspectors have to make repeat visits to a property, we send a bill and if not paid, the bill is assessed to the property owner's property taxes.

c. This is a City ordinance that says no property owner shall allow a nuisance. There is a very long definition of what is a nuisance. Suffice it to say a nuisance is anything that bothers or annoys more than just one neighbor. If the nuisance activity continues, after

the property owner receives a notice to discontinue the unacceptable behavior, we charge a misdemeanor. We just started doing this, so we haven't had our first court case yet.

d. This is a state law that says no property owner or occupant shall maintain or permit a nuisance. Once again a nuisance is defined as anything that bothers or annoys more than just one neighbor. Under the state law a court can actually take someone's property away from them for up to a year. Because this is such a serious sanction, the state law requires two prior nuisance incidents provable by clear and convincing evidence, then a city attorney 30 day warning letter, then a third nuisance incident after the 30 days is up, before bringing the court case. So far every property has quieted down after getting the 30-day letter and the City hasn't had to ask a court to take a property away yet. This state law defines nuisance activity to include criminal activity such as drug dealing, prostitution, etc.

e. This is another new tool the City Council just gave us that goes in effect January 1, 2004. If there is a single nuisance incident or there are excessive code inspection visits, a Notice of Intent to Revoke can be mailed to the landlord. If the landlord then cooperates and abates the nuisance, agrees to better lease management practices and allows an interior inspection, the intent to revoke can be withdrawn. If not, then the City Council can revoke the landlord's "license to do business" and renting without the "license" is a crime.

f. We have used this law three times and been successful each time.

g. We have used this law 16 times and been successful in all 16 cases. We can start a law suit whenever a rental property has outstanding code or nuisance violations. The first court hearing has to be within 10 days. There are no jury trials. If the landlord admits the violations exist (or the Court so determines), the landlord is given a reasonable period to comply, or face heavy fines. In extreme cases the Court temporarily places the property in receivership, has the receiver handle evictions and make repairs, and charges the costs to the landlord's property taxes. The City has a $200,000 repair fund to front the repair money which gets replenished by property tax assessment against the owner.

h. Although this law has been on the books since 1991, it has never been used until now. A landlord who refuses to evict a drug-dealing tenant can have his/her property forfeited.

## Step 6

Going to Court -- sometimes just having the inspectors and the police is sufficient testimony. Other times neighbors need to decide if the problem is serious enough to merit their coming to court too. A community impact statement is always helpful.

---

# Routine Code Enforcement Protocol

**A routine code enforcement case** is simply any housing code violation regarding a single-family residential unit or duplex, either owner occupied or rental, including the exterior property area, garages, sheds, fences, and the structure itself, both interior and exterior. A routine NHPI case also covers the exterior property area only for commercial buildings and apartment buildings.

## Step 1

Call 651-266-8989 to report a violation/make a complaint. Our most common calls are for garbage/rubbish, mattresses, appliances, junk vehicles, graffiti and overgrown properties. Very soon the City will offer on-line or web submission of complaints.

## Step 2

An inspector visits the property -- usually the next day after the call, almost always within the week. If the inspector determines the complaint is valid or "founded" (i.e., finds a violation), then a correction order or abatement order is mailed to the occupant and the property owner. See Rules and Procedures, (pdf file) Section III., for time lines, and Section IV.C., for our reasons for giving extensions.

040024

**Step 3**

Follow the progress of the case on-line. Once an inspector determines the complaint is "founded," then the property address, the inspector's badge number, what the inspector found, what the inspector did, and approximately when the inspector will be back, can all be seen on-line at the City's web site. Keep in mind that Neighborhood Housing and Property Improvement closes the case when either the issues are resolved or a work order is sent to the Parks Department to abate the problem. In other words, it's possible that we've closed the case but the junk still remains because the Parks Department crew hasn't gotten there yet.

**Step 4**

After the time line for compliance has passed, there is a re-inspection of the property. If non-compliant, then a misdemeanor tag is issued or a $50 excessive consumption bill is mailed. If it's garbage/rubbish, a junk vehicle, ice or snow on the sidewalk, or tall grass or weeds, then a Parks Department work crew is sent out to clean-up, shovel or mow. This is called an abatement. The Police Department handles abatement tows which can cost up to $1000. If the City has to come abate the problem, the cost is billed at $240 per hour minimum and assessed to the owner's property taxes. Graffiti removal is a special situation. If you're the victim of graffiti, the City will remove it at no cost. Call 651-266-8989.

**Step 5**

If we have to come out a second time to re-inspect, and there's still not compliance, the charge is $75. Every time after that is $150.

**Step 6**

Even if the property owner corrects the violation in timely fashion, you only get so many bites of the apple before criminal charges are filed or excessive consumption bills are mailed. If there's a second founded violation within two years of a similar founded violation, we will issue a tag on the day we find the violation rather than on the reinspect day. If there's a third founded violation within 12 months, we'll send a $50 bill assessable to your property taxes if not paid. A fourth in 12 months is $75. A fifth is $150.

**Step 7**

Keep in mind that progress can be slow. Sometimes the property owner appeals the inspector's decision that a violation exists. Sometimes the property owner fails to appear in court and a warrant has to be issued. Sometimes the Parks Department crew takes a week to get there.

We have instituted three new procedures to try to speed up compliance:

A) If it's garbage, rubbish, mattresses, appliances, etc. on or near an alley, call 651-266-8989. Immediately -- without an inspector visit -- a letter is sent to the property owner giving 72 hours from the date of mailing to clean-up. After 72 hours an inspector visits to check if the junk is gone and verifies the address. If the junk is still there, a work order is immediately sent to the Parks Department Abatement Crew. Hopefully this will result in alley trash removal within days of the original call. Keep in mind that for serious hazards we can do immediate abatements.

B) If it's tall grass and weeds (over eight inches high) in the boulevard, it's the same as alley trash - See A) above and call 651-266-8989 for immediate action.

C) If it's a correction order situation, in other words a house that needs painting, or a new roof, etc., then we have a list of resources (pdf file) to help property owners achieve compliance.

040025

**Step 8**

Watch for a customer satisfaction survey on line so we can see how we're doing in your eyes. If you think we closed a file without solving the problem, you'll be able to tell us that.

## Sweeps Protocol

A **"sweep"** is when code enforcement inspectors look at every single property in a given area for exterior property violations. This is different from our usual operation, which is complaint-based - i.e., we get a complaint and go out and inspect. Occasionally we also do other kinds of sweeps, such as a "tows sweep" with the Police Department.

To get a sweep in your neighborhood you have to go to your District Council. Every February Neighborhood Housing and Property Improvement meets with all 17 District Councils to set the sweep schedule for the year. Fifteen to twenty sweeps are planned for 2004. We try to sandwich a sweep in with neighborhood clean-up day and advance flyering. After a sweep we try to get neighbors to volunteer to patrol the swept area to keep it looking good. This is known as the "Good Neighbor Program." Call your District Council to participate. It doesn't have to be just for sweep areas.

## Notes for Tenants and Landlords

1. If you're a TENANT and your LANDLORD IS NOT MAKING REPAIRS, call us at 651-266-8989 and ask for an inspection or call Community Stabilization at 651-225-8778. State law prohibits your landlord from retaliating against you for calling us (no evictions or rent increases). Free legal advice for repair problems may be obtained by calling Housing Alliance Law Office at 651-222-4731. In some cases, courts have ordered landlords to pay hotel bills while repairs are being made. YOUR LANDLORD IS REQUIRED TO PROVIDE DECENT, SAFE HOUSING and we can enforce this!

2. If you're a landlord of a single-family rental or duplex and don't live on the premises you are required to register the property.

To register, use one of two Rental Unit Registration forms, one **for Single Units** and one **for rental properties with Multiple Units**. Both of these forms are available for subscription to make sure you have the latest version.

You may also call us at 651-266-1900 to get a registration form.

If you are a landlord having trouble with a tenant, contact the St. Paul Association of Responsible Landlords at 651-647-6810.

040026



040027



Home   Residents   Business   Leisure   Mayor   Council   Depts          Search

www.ci.stpaul.mn.us
651-266-8989

**Residents**

Citizen Service

Housing & Property Info

District Councils

Licensing/Permits

Schools & Libraries

Code & Charter

**Business**

**Leisure**

**Mayor**

**City Council**

**City Departments**

**City Job Openings**

**Documents and Maps**

# Housing Information for Consumers

Home buying || Leases || Public housing and Section 8
Subsidized rental housing || Tenant/landlord issues || Utility payment issues

Mortgage foreclosure prevention || Rental housing myths || Homelessness report
This month's rental rates for the past three years || Year-to-date rental rates
New housing units in Saint Paul -- condos and rentals

The following offices and agencies can help with a variety of housing concerns.



**Emergency Housing Intake for Saint Paul/Ramsey County Residents** is for homeless people who are willing to live in an emergency shelter. It is accessed by contacting the Emergency Housing Intake office at Family Place, 639 Jackson Street, in Central Methodist Church, across from Regions Hospital: **651-225-9357.**

**Services to Homeless people** are available through the following agencies:

- **The Dorothy Day Center,** 186 Old 6th Street, 651-293-9907

- **Listening House,** 215 Ninth Street West, 651-227-5911

- **Safe Zone Teen Drop-In Center,** 410 Prince Street, 651-224-9644

- **Ramsey County Human Services,** 160 East Robert Street, 651-266-4444

Wilder Research Center Report: Emergency Shelters, Transitional Housing, and Battered Women's Shelters (.pdf document). The homeless shelters in Saint Paul report data to a central collection point. Wilder Research Center then compiles this information and provides Saint Paul with a profile on the dimensions of use of emergency shelters, battered-women's shelters and transitional housing. The information includes barriers to independent living reported by shelter guests, educational levels, employment patterns, as well as age, race and gender breakouts.

The Emergency Shelter Grant Program for non-profit agencies is administered from the City's Department of Planning and Economic Development (PED) 651-266-6008.

General Housing Questions and referrals may be answered at the Citizen Services Office, 651-266-8989.

**Home buying with City home buying assistance programs** -- call 651-266-6626, or see Saint Paul's City Living program.

Home Improvement Loans -- available through the CityLiving program or call 651-266-6626

HUD Homes are homes that mortgage companies have foreclosed upon and returned to the federal government's Department of Housing and Urban Development (HUD). Houses are sold to the general public by sealed bid. For

available Minnesota homes, see the HUD homes external link page, and then:

- Click on "Go to the requested page"

- Click on "Available properties for sale"

- Select a city or cities (There may be no Twin Cities homes available.)

     Remember, you will need the services of a Realtor to make a
     bid.

---

**Leases.** Leases, Licensing, Lead Hazards, and Landlord Training, plus a way
to find downloadable valid lease forms.

Mortgage Foreclosure Prevention Services may be obtained at 651-266-6626.
More details.

---

**Public Housing and Section 8** are administered by the Public Housing
Agency, 480 Cedar Street, Suite 300, Saint Paul, MN 55102. 651-298-5158
www.stpaulpha.org

- Public Housing Applications can be done through the automated phone
  system at 651-298-4444. Housing for low income families and for seniors.

- Section 8 Applications are closed due to the large number of applicants
  already on the waiting list and the slow turnover of available vouchers. The
  Public Housing Agency will publicly announce when applications will be
  taken again.

- Suburban Section 8 Applications are often closed. To monitor the status of
  the application process, call the Metro Council HRA at 651-602-1428.

Rental Listings - weekly - of apartments, duplexes, houses, condos, and
townhouses can be found on the Internet at www.housinglink.org, Sunday
through Wednesday each week.

Rental listings, up to date, from the local newspapers are reproduced at
www.twincities.com and www.apartments.com.

Rental listings - Market rate and in a paper format and up to date (and
unfortunately in small print) is the Sunday Pioneer Press Classified Ad sections
916-922. These listings are organized by neighborhood and building type.
(E.g., apartment bldg, duplex, townhouse, single family house)

Rental Listings (Subsidized) These are privately owned government assisted
rental buildings. Each place has a separate application, and likely has a waiting
list. The buildings are located throughout the St Paul Minneapolis and suburban
area. To get a copy, call 612-370-3000, extension 3500. Buildings in Saint Paul
and Ramsey County participating in subsidized housing programs.

Rental Deposit help and first months rent assistance. Eligible applicants need
to apply to Ramsey County Human Services 651-266-4444, 160 East Kellogg.
They are often busy, so do not wait until the last minute. This help is offered
once in a 12-month span. If you have already used it, and 12 months have not
elapsed, it is recommended that you contact neighborhood social service
centers which may have additional sources of financial help.

Rental Assistance loans are offered by the Catholic Charities Frogtown office
651- 222-1250. The Salvation Army east office is at 651-776-2653; the
Salvation Army west office is at 651-224-4631. Ask for Social Services. It may
take ten working days to get an appointment. Plan ahead.

Senior Citizen Housing, subsidized and non-subsidized. You can get the best
list of all the choices from Senior Housing Inc. 612-617-1921. Also see
www.seniorhousingdirectory.com. The cost is $6.

Senior Citizen Public Housing in Saint Paul, 651-298-5158, has 16 Hi-Rise buildings which focus on Senior Citizens and the Disabled. To see a list of buildings, and for more information go to www.stpaulpha.org

**Subsidized Rental Housing** for lower-income people tends to run full with waiting lists. Apply in advance of actually needing to move. There are three ways to get this type of housing.

● Apply for Public Housing 651-298-5158 or www.stpaulpha.org

● Apply for Section 8 vouchers from Public Housing (see above)

● Call buildings on the Saint Paul subsidized housing list

**Tenant/landlord issues.** Questions from low-income residents should be directed to any of the following:

● Southern Minnesota Regional Legal Assistance (Legal Aid ) 651-222-4731 (300 Minnesota Building, St Paul)

● Homeline, a statewide service at www.homelinemn.org or 612-728-5767.

● St. Paul Tenants Union, 651-221-0501.

● Minnesota Attorney General's consumer line, 651-296-3353, or www.ag.state.mn.us/consumer. Click on Housing in the left margin and scroll down to Landlords and Tenants; Rights and Responsibilities. Also, this free booklet spells out the law in simple terms. Both Landlords and Tenants are encouraged to read and study this booklet. Doing so can save both landlords and tenants hundreds of dollars in court costs.

Tenant/landlord questions from landlords may be directed to the St Paul Association of Responsible Landlords (SPARL) 1595 Selby, Suite 104 651- 647-6810. www.sparl.org Attendance at their Landlord 101 class is encouraged. Also, engaging the services of a private attorney can be helpful. For other helpful tips, see Leases, Licensing, Lead Hazards, and Landlord Training, plus a way to find downloadable valid lease forms.

**To make a complaint about your rented home:**

● for single homes and duplexes, see How to Make a Housing Complaint.

● for dwellings of three or more units, contact Fire Prevention at 651-228-6230.

**Utility payment issues.** The law permits landlords to apportion utility costs among tenants if there is a way to accurately measure the usage of each apartment. The utility company bill remains in the landlord's name if the units are not separately metered.

Help in paying utility bills. Partial help in paying back bills is available from the following:

● Ramsey County (or your local county) Emergency Assistance, 160 East Kellogg (651-266-4444)

● Ramsey Action Programs Fuel Assistance (651-645-6470). Call in September for an application. Applications are mailed in early October.

● The Heat Share Program is operated from the West 7th Street office of the

Salvation Army (651-224-4316).

040031



Home    Residents    Business    Leisure    Mayor    Council    Depts



www.ci.stpaul.mn.us
651-266-8989

**Residents**

**Business**

**Leisure**

**Mayor**

**City Council**

**City Departments**

**Neigh Hsg & Prop Imp**

   How-to Guide

   Rules & Procedures (pdf)

   Truth in Sale of Housing

   Rental Units

   Vacant Buildings

**City Job Openings**

**Documents and Maps**

# Neighborhood Housing and Property Improvement

For complaints about a dwelling of three or more units, contact Fire Prevention at 651-228-6230.

## How to make a housing complaint

**This is a how-to guide** for residents to work with the City's Department of Neighborhood Housing and Property Improvement (NHPI), formerly known as Code Enforcement.

How to shut down problem properties

How to get action and track progress on routine code enforcement cases

How to get a "Sweep" of your neighborhood

Notes for tenants and landlords

---

## Problem Properties Protocol

**A problem property** is best defined by simply saying: If you live next door to a problem property you know it! Constant calls to get rid of the junk, intolerable behavior by occupants and guests, etc. A problem property can be a rental property or an owner occupied property; it can be a commercial property or a residential property; it can be a single-family unit, a duplex or an apartment building.

### Step 1

Exhaust usual procedures such as calling the Police for police issues, calling Code Enforcement for routine code matters, calling Animal Control for animal control matters, visiting with the problem neighbor (if not too dangerous), calling the landlord, enlisting the help of your block club or district council, going to the Dispute Resolution Center, etc. Anonymous calls to the Police to come to an intersection are not as helpful as giving your name and providing a specific address that needs responding to.

### Step 2

If the problems persist, call Andy Dawkins directly at 651-266-1927 or submit an online complaint. Andy is the Director of Neighborhood Housing and Property Improvement and the administrator of the Problem Property Unit. The Problem Property Unit consists of two Police Officers, an Assistant City Attorney, and two Inspectors.

### Step 3

Andy assigns a Police Officer to do a preliminary investigation. We gather all the information we can on the property. We check City records, including the Police Department, the FORCE Unit, the Fire Department, Animal Control, Code Enforcement and Rental Registration. We interview the neighbors and the local

**040032**

beat cops. We send an inspector to check for code issues.

## Step 4

The unit meets every two weeks and decides which cases to open and which to reject. To open a case we need to tie the nuisance behavior to the occupants or owner. We need to have solid information that will stand-up in court. Generally, we notify the property owner and attempt to get cooperation on solving the problem. At any one point in time we can designate 25 problem properties to get full police attention whenever dispatched to that address. In other words, the officer responding is asked to take the time to identify and interview all the individuals involved in an attempt to tie the alleged nuisance behavior to the occupant of a specific address. Anonymous calls to come to an intersection are not as helpful as giving your name and providing a specific address that needs responding to.

## Step 5

The unit determines which strategy to employ to stop the nuisance activity or close the property down. Is it a landlord/tenant property or owner-occupied? Are the tenants part of the problem? If it's an apartment building we have to work with Fire Prevention Certificate of Occupancy program. If it's a commercial structure we have to work with the Licensing Inspection & Environmental Protection Department.

Here are the strategies we're currently using to stop the nuisance activity or close the property down:

| For owner-occupied properties | For rental 1- or 2-unit properties |
|---|---|
| 1) Code enforcement orders to correct or abate. | 1) Code enforcement orders to correct or abate. |
| 2) Condemnation/vacant building registration. | 2) Condemnation/vacant building registration. |
| 3) Criminal charges a | 3) Criminal charges a |
| 4) Charging for excessive consumption b | 4) Charging for excessive consumption b |
| 5) Sec. 45.04 nuisance abatement order c | 5) Sec. 45.04 nuisance abatement order c |
| 6) Sec. 617.80 nuisance abatement order d [This law also applies to commercial properties and apartment buildings] | 6) Sec. 617.80 nuisance abatement order d [This law also applies to commercial properties and apartment buildings] |
| | 7) Rental Registration Revocation e |
| | 8) City Attorney initiated evictions f [This also applies to apartment buildings] |
| | 9) City-initiated Tenant Remedies Actions g [This also applies to apartment buildings and vacant former dwellings] |
| | 10) Real Estate Seizures h [This also applies to apartment buildings] |

**Notes**

a. For problem properties we issue criminal charges (otherwise known as "tagging") on the very first instance we observe a violation. See Rules and Procedures, (pdf file) Section IV.B., for Neighborhood Housing and Property Improvement's entire tagging policy, and Section V. for the court-adopted "sanctions schedule."

b. This is a new tool the City Council just gave us that goes in effect January 1, 2004. If code inspectors have to make repeat visits to a property, we send a bill and if not paid, the bill is assessed to the property owner's property taxes.

c. This is a City ordinance that says no property owner shall allow a nuisance. There is a very long definition of what is a nuisance. Suffice it to say a nuisance is anything that

bothers or annoys more than just one neighbor. If the nuisance activity continues, after the property owner receives a notice to discontinue the unacceptable behavior, we charge a misdemeanor. We just started doing this, so we haven't had our first court case yet.

d. This is a state law that says no property owner or occupant shall maintain or permit a nuisance. Once again a nuisance is defined as anything that bothers or annoys more than just one neighbor. Under the state law a court can actually take someone's property away from them for up to a year. Because this is such a serious sanction, the state law requires two prior nuisance incidents provable by clear and convincing evidence, then a city attorney 30 day warning letter, then a third nuisance incident after the 30 days is up, before bringing the court case. So far every property has quieted down after getting the 30-day letter and the City hasn't had to ask a court to take a property away yet. This state law defines nuisance activity to include criminal activity such as drug dealing, prostitution, etc.

e. This is another new tool the City Council just gave us that goes in effect January 1, 2004. If there is a single nuisance incident or there are excessive code inspection visits, a Notice of Intent to Revoke can be mailed to the landlord. If the landlord then cooperates and abates the nuisance, agrees to better lease management practices and allows an interior inspection, the intent to revoke can be withdrawn. If not, then the City Council can revoke the landlord's "license to do business" and renting without the "license" is a crime.

f. We have used this law three times and been successful each time.

g. We have used this law 16 times and been successful in all 16 cases. We can start a law suit whenever a rental property has outstanding code or nuisance violations. The first court hearing has to be within 10 days. There are no jury trials. If the landlord admits the violations exist (or the Court so determines), the landlord is given a reasonable period to comply, or face heavy fines. In extreme cases the Court temporarily places the property in receivership, has the receiver handle evictions and make repairs, and charges the costs to the landlord's property taxes. The City has a $200,000 repair fund to front the repair money which gets replenished by property tax assessment against the owner.

h. Although this law has been on the books since 1991, it has never been used until now. A landlord who refuses to evict a drug-dealing tenant can have his/her property forfeited.

## Step 6

Going to Court -- sometimes just having the inspectors and the police is sufficient testimony. Other times neighbors need to decide if the problem is serious enough to merit their coming to court too. A community impact statement is always helpful.

---

# Routine Code Enforcement Protocol

**A routine code enforcement case** is simply any housing code violation regarding a single-family residential unit or duplex, either owner occupied or rental, including the exterior property area, garages, sheds, fences, and the structure itself, both interior and exterior. Code enforcement is also responsible for maintaining the City's right-of-way free and clear of obstructions and garbage. For complaints about a dwelling of three or more units, contact Fire Prevention at 651-228-6230.

## Step 1

Call 651-266-8989 to report a violation/make a complaint or submit an online complaint. Our most common calls are for garbage/rubbish, mattresses, appliances, junk vehicles, graffiti and overgrown properties.

## Step 2

An inspector visits the property -- usually the next day after the call, almost always within the week. If the inspector determines the complaint is valid or "founded" (i.e., finds a violation), then a correction order or abatement order is mailed to the occupant and the property owner. See Rules and Procedures, (pdf file) Section III., for time lines, and Section IV.C., for our reasons for giving extensions.

**040034**

## Step 3

Follow the progress of the case on-line. Once an inspector determines the complaint is "founded," then the property address, the inspector's badge number, what the inspector found, what the inspector did, and approximately when the inspector will be back, can all be seen on-line at the City's web site. Keep in mind that Neighborhood Housing and Property Improvement closes the case when either the issues are resolved or a work order is sent to the Parks Department to abate the problem. In other words, it's possible that we've closed the case but the junk still remains because the Parks Department crew hasn't gotten there yet.

## Step 4

After the time line for compliance has passed, there is a re-inspection of the property. If non-compliant, then a misdemeanor tag is issued or a $50 excessive consumption bill is mailed. If it's garbage/rubbish, a junk vehicle, ice or snow on the sidewalk, or tall grass or weeds, then a Parks Department work crew is sent out to clean-up, shovel or mow. This is called an abatement. The Police Department handles abatement tows which can cost up to $1000. If the City has to come abate the problem, the cost is billed at $240 per hour minimum and assessed to the owner's property taxes. Graffiti removal is a special situation. If you're the victim of graffiti, the City will remove it at no cost. Call 651-266-8989.

## Step 5

If we have to come out a second time to re-inspect, and there's still not compliance, the charge is $75. Every time after that is $150.

## Step 6

Even if the property owner corrects the violation in timely fashion, you only get so many bites of the apple before criminal charges are filed or excessive consumption bills are mailed. If there's a second founded violation within two years of a similar founded violation, we will issue a tag on the day we find the violation rather than on the reinspect day. If there's a third founded violation within 12 months, we'll send a $50 bill assessable to your property taxes if not paid. A fourth in 12 months is $75. A fifth is $150.

## Step 7

Keep in mind that progress can be slow. Sometimes the property owner appeals the inspector's decision that a violation exists. Sometimes the property owner fails to appear in court and a warrant has to be issued. Sometimes the Parks Department crew takes a week to get there.

We have instituted three new procedures to try to speed up compliance:

A) If it's garbage, rubbish, mattresses, appliances, etc. on or near an alley, call 651-266-8989. Immediately -- without an inspector visit -- a letter is sent to the property owner giving 72 hours from the date of mailing to clean-up. After 72 hours an inspector visits to check if the junk is gone and verifies the address. If the junk is still there, a work order is immediately sent to the Parks Department Abatement Crew. Hopefully this will result in alley trash removal within days of the original call. Keep in mind that for serious hazards we can do immediate abatements.

B) If it's tall grass and weeds (over eight inches high) in the boulevard, it's the same as alley trash - See A) above and call 651-266-8989 for immediate action.

C) If it's a correction order situation, in other words a house that needs painting, or a new roof, etc., then we have a list of resources (pdf file) to help property owners achieve compliance.

040035

**Step 8**

Watch for a customer satisfaction survey on line so we can see how we're doing in your eyes. If you think we closed a file without solving the problem, you'll be able to tell us that.

## Sweeps Protocol

A **"sweep"** is when code enforcement inspectors look at every single property in a given area for exterior property violations. This is different from our usual operation, which is complaint-based - i.e., we get a complaint and go out and inspect. Occasionally we also do other kinds of sweeps, such as a "tows sweep" with the Police Department.

To get a sweep in your neighborhood you have to go to <u>your District Council</u>. Every February Neighborhood Housing and Property Improvement meets with all 17 District Councils to set the sweep schedule for the year. Fifteen to twenty sweeps are planned for 2004. We try to sandwich a sweep in with neighborhood clean-up day and advance flyering. After a sweep we try to get neighbors to volunteer to patrol the swept area to keep it looking good. This is known as the "Good Neighbor Program." Call your District Council to participate. It doesn't have to be just for sweep areas.

## Notes for Tenants and Landlords

1. If you're a TENANT and your LANDLORD IS NOT MAKING REPAIRS, call us at 651-266-8989 and ask for an inspection or call Community Stabilization at 651-225-8778. State law prohibits your landlord from retaliating against you for calling us (no evictions or rent increases). Free legal advice for repair problems may be obtained by calling Housing Alliance Law Office at 651-222-4731. In some cases, courts have ordered landlords to pay hotel bills while repairs are being made. YOUR LANDLORD IS REQUIRED TO PROVIDE DECENT, SAFE HOUSING and we can enforce this!

2. If you're a landlord of a single-family rental or duplex and don't live on the premises you are required to register the property.

To register, use one of two Rental Unit Registration forms, one **for Single Units** and one **for rental properties owners with more than one rental building.** Both of these forms are available for subscription to make sure you have the latest version.

You may also call us at 651-266-1900 to get a registration form.

If you are a landlord having trouble with a tenant, contact the St. Paul Association of Responsible Landlords at 651-647-6810.

040036



**What's New?    Search    Site Index    Policies & Practices    Contact Us    Home**

040037

Home   Residents   Business   Leisure   Mayor   Council   Depts

Search



www.ci.stpaul.mn.us
651-266-8989

**Residents**

**Business**

**Leisure**

**Mayor**

**City Council**

**City Departments**

**Neigh Hsg & Prop Imp**

   How-to Guide

   Rules & Procedures (pdf)

   Truth In Sale of Housing

   Rental Units

   Vacant Buildings

**City Job Openings**

**Documents and Maps**

# Neighborhood Housing and Property Improvement

For complaints about a dwelling of three or more units, contact Fire Prevention at 651-228-6230.

## How to make a housing complaint

**This is a how-to guide** for residents to work with the City's Department of Neighborhood Housing and Property Improvement (NHPI), formerly known as Code Enforcement.

How to shut down problem properties

How to get action and track progress on routine code enforcement cases

How to get a "Sweep" of your neighborhood

Notes for tenants and landlords

## Problem Properties Protocol

**A problem property** is best defined by simply saying: If you live next door to a problem property you know it! Constant calls to get rid of the junk, intolerable behavior by occupants and guests, etc. A problem property can be a rental property or an owner occupied property; it can be a commercial property or a residential property; it can be a single-family unit, a duplex or an apartment building.

### Step 1

Exhaust usual procedures such as calling the Police for police issues, calling Code Enforcement for routine code matters, calling Animal Control for animal control matters, visiting with the problem neighbor (if not too dangerous), calling the landlord, enlisting the help of your block club or district council, going to the Dispute Resolution Center, etc. Anonymous calls to the Police to come to an intersection are not as helpful as giving your name and providing a specific address that needs responding to.

### Step 2

If the problems persist, call Andy Dawkins directly at 651-266-1927 or submit an online complaint. Andy is the Director of Neighborhood Housing and Property Improvement and the administrator of the Problem Property Unit. The Problem Property Unit consists of two Police Officers, an Assistant City Attorney, and two Inspectors.

### Step 3

Andy assigns a Police Officer to do a preliminary investigation. We gather all the information we can on the property. We check City records, including the Police Department, the FORCE Unit, the Fire Department, Animal Control, Code Enforcement and Rental Registration. We interview the neighbors and the local

040038

beat cops. We send an inspector to check for code issues.

### Step 4

The unit meets every two weeks and decides which cases to open and which to reject. To open a case we need to tie the nuisance behavior to the occupants or owner. We need to have solid information that will stand-up in court. Generally, we notify the property owner and attempt to get cooperation on solving the problem. At any one point in time we can designate 25 problem properties to get full police attention whenever dispatched to that address. In other words, the officer responding is asked to take the time to identify and interview all the individuals involved in an attempt to tie the alleged nuisance behavior to the occupant of a specific address. Anonymous calls to come to an intersection are not as helpful as giving your name and providing a specific address that needs responding to.

### Step 5

The unit determines which strategy to employ to stop the nuisance activity or close the property down. Is it a landlord/tenant property or owner-occupied? Are the tenants part of the problem? If it's an apartment building we have to work with Fire Prevention Certificate of Occupancy program. If it's a commercial structure we have to work with the Licensing Inspection & Environmental Protection Department.

Here are the strategies we're currently using to stop the nuisance activity or close the property down:

| For owner-occupied properties | For rental 1- or 2-unit properties |
|---|---|
| 1) Code enforcement orders to correct or abate. | 1) Code enforcement orders to correct or abate. |
| 2) Condemnation/vacant building registration. | 2) Condemnation/vacant building registration. |
| 3) Criminal charges [a] | 3) Criminal charges [a] |
| 4) Charging for excessive consumption [b] | 4) Charging for excessive consumption [b] |
| 5) Sec. 45.04 nuisance abatement order [c] | 5) Sec. 45.04 nuisance abatement order [c] |
| 6) Sec. 617.80 nuisance abatement order [d] [This law also applies to commercial properties and apartment buildings] | 6) Sec. 617.80 nuisance abatement order [d] [This law also applies to commercial properties and apartment buildings] |
| | 7) Rental Registration Revocation [e] |
| | 8) City Attorney initiated evictions [f] [This also applies to apartment buildings] |
| | 9) City-initiated Tenant Remedies Actions [g] [This also applies to apartment buildings and vacant former dwellings] |
| | 10) Real Estate Seizures [h] [This also applies to apartment buildings] |

#### Notes

a. For problem properties we issue criminal charges (otherwise known as "tagging") on the very first instance we observe a violation. See Rules and Procedures, (pdf file) Section IV.B., for Neighborhood Housing and Property Improvement's entire tagging policy, and Section V. for the court-adopted "sanctions schedule."

b. This is a new tool the City Council just gave us that goes in effect January 1, 2004. If code inspectors have to make repeat visits to a property, we send a bill and if not paid, the bill is assessed to the property owner's property taxes.

c. This is a City ordinance that says no property owner shall allow a nuisance. There is a very long definition of what is a nuisance. Suffice it to say a nuisance is anything that

040039

bothers or annoys more than just one neighbor. If the nuisance activity continues, after the property owner receives a notice to discontinue the unacceptable behavior, we charge a misdemeanor. We just started doing this, so we haven't had our first court case yet.

d. This is a state law that says no property owner or occupant shall maintain or permit a nuisance. Once again a nuisance is defined as anything that bothers or annoys more than just one neighbor. Under the state law a court can actually take someone's property away from them for up to a year. Because this is such a serious sanction, the state law requires two prior nuisance incidents provable by clear and convincing evidence, then a city attorney 30 day warning letter, then a third nuisance incident after the 30 days is up, before bringing the court case. So far every property has quieted down after getting the 30-day letter and the City hasn't had to ask a court to take a property away yet. This state law defines nuisance activity to include criminal activity such as drug dealing, prostitution, etc.

e. This is another new tool the City Council just gave us that goes in effect January 1, 2004. If there is a single nuisance incident or there are excessive code inspection visits, a Notice of Intent to Revoke can be mailed to the landlord. If the landlord then cooperates and abates the nuisance, agrees to better lease management practices and allows an interior inspection, the intent to revoke can be withdrawn. If not, then the City Council can revoke the landlord's "license to do business" and renting without the "license" is a crime.

f. We have used this law three times and been successful each time.

g. We have used this law 16 times and been successful in all 16 cases. We can start a law suit whenever a rental property has outstanding code or nuisance violations. The first court hearing has to be within 10 days. There are no jury trials. If the landlord admits the violations exist (or the Court so determines), the landlord is given a reasonable period to comply, or face heavy fines. In extreme cases the Court temporarily places the property in receivership, has the receiver handle evictions and make repairs, and charges the costs to the landlord's property taxes. The City has a $200,000 repair fund to front the repair money which gets replenished by property tax assessment against the owner.

h. Although this law has been on the books since 1991, it has never been used until now. A landlord who refuses to evict a drug-dealing tenant can have his/her property forfeited.

## Step 6

Going to Court -- sometimes just having the inspectors and the police is sufficient testimony. Other times neighbors need to decide if the problem is serious enough to merit their coming to court too. A community impact statement is always helpful.

---

# Routine Code Enforcement Protocol

**A routine code enforcement case** is simply any housing code violation regarding a single-family residential unit or duplex, either owner occupied or rental, including the exterior property area, garages, sheds, fences, and the structure itself, both interior and exterior. Code enforcement is also responsible for maintaining the City's right-of-way free and clear of obstructions and garbage. For complaints about a dwelling of three or more units, contact Fire Prevention at 651-228-6230.

## Step 1

Call 651-266-8989 to report a violation/make a complaint or submit an online complaint. Our most common calls are for garbage/rubbish, mattresses, appliances, junk vehicles, graffiti and overgrown properties.

## Step 2

An inspector visits the property -- usually the next day after the call, almost always within the week. If the inspector determines the complaint is valid or "founded" (i.e., finds a violation), then a correction order or abatement order is mailed to the occupant and the property owner. See Rules and Procedures, (pdf file) Section III., for time lines, and Section IV.C., for our reasons for giving extensions.

040040

### Step 3

Follow the progress of the case on-line. Once an inspector determines the complaint is "founded," then the property address, the inspector's badge number, what the inspector found, what the inspector did, and approximately when the inspector will be back, can all be seen on-line at the City's web site. Keep in mind that Neighborhood Housing and Property Improvement closes the case when either the issues are resolved or a work order is sent to the Parks Department to abate the problem. In other words, it's possible that we've closed the case but the junk still remains because the Parks Department crew hasn't gotten there yet.

### Step 4

After the time line for compliance has passed, there is a re-inspection of the property. If non-compliant, then a misdemeanor tag is issued or a $50 excessive consumption bill is mailed. If it's garbage/rubbish, a junk vehicle, ice or snow on the sidewalk, or tall grass or weeds, then a Parks Department work crew is sent out to clean-up, shovel or mow. This is called an abatement. The Police Department handles abatement tows which can cost up to $1000. If the City has to come abate the problem, the cost is billed at $240 per hour minimum and assessed to the owner's property taxes. Graffiti removal is a special situation. If you're the victim of graffiti, the City will remove it at no cost. Call 651-266-8989.

### Step 5

If we have to come out a second time to re-inspect, and there's still not compliance, the charge is $75. Every time after that is $150.

### Step 6

Even if the property owner corrects the violation in timely fashion, you only get so many bites of the apple before criminal charges are filed or excessive consumption bills are mailed. If there's a second founded violation within two years of a similar founded violation, we will issue a tag on the day we find the violation rather than on the reinspect day. If there's a third founded violation within 12 months, we'll send a $50 bill assessable to your property taxes if not paid. A fourth in 12 months is $75. A fifth is $150.

### Step 7

Keep in mind that progress can be slow. Sometimes the property owner appeals the inspector's decision that a violation exists. Sometimes the property owner fails to appear in court and a warrant has to be issued. Sometimes the Parks Department crew takes a week to get there.

We have instituted three new procedures to try to speed up compliance:

> A) If it's garbage, rubbish, mattresses, appliances, etc. on or near an alley, call 651-266-8989. Immediately -- without an inspector visit -- a letter is sent to the property owner giving 72 hours from the date of mailing to clean-up. After 72 hours an inspector visits to check if the junk is gone and verifies the address. If the junk is still there, a work order is immediately sent to the Parks Department Abatement Crew. Hopefully this will result in alley trash removal within days of the original call. Keep in mind that for serious hazards we can do immediate abatements.

> B) If it's tall grass and weeds (over eight inches high) in the boulevard, it's the same as alley trash - See A) above and call 651-266-8989 for immediate action.

> C) If it's a correction order situation, in other words a house that needs painting, or a new roof, etc., then we have a list of resources (pdf file) to help property owners achieve compliance.

040041

## Step 8

Watch for a customer satisfaction survey on line so we can see how we're doing in your eyes. If you think we closed a file without solving the problem, you'll be able to tell us that.

---

# Sweeps Protocol

A "sweep" is when code enforcement inspectors look at every single property in a given area for exterior property violations. This is different from our usual operation, which is complaint-based - i.e., we get a complaint and go out and inspect. Occasionally we also do other kinds of sweeps, such as a "tows sweep" with the Police Department.

To get a sweep in your neighborhood you have to go to <u>your District Council</u>. Every February Neighborhood Housing and Property Improvement meets with all 17 District Councils to set the sweep schedule for the year. Fifteen to twenty sweeps are planned for 2004. We try to sandwich a sweep in with neighborhood clean-up day and advance flyering. After a sweep we try to get neighbors to volunteer to patrol the swept area to keep it looking good. This is known as the "Good Neighbor Program." Call your District Council to participate. It doesn't have to be just for sweep areas.

---

# Notes for Tenants and Landlords

1. If you're a TENANT and your LANDLORD IS NOT MAKING REPAIRS, call us at 651-266-8989 and ask for an inspection or call Community Stabilization at 651-225-8778. State law prohibits your landlord from retaliating against you for calling us (no evictions or rent increases). Free legal advice for repair problems may be obtained by calling Housing Alliance Law Office at 651-222-4731. In some cases, courts have ordered landlords to pay hotel bills while repairs are being made. YOUR LANDLORD IS REQUIRED TO PROVIDE DECENT, SAFE HOUSING and we can enforce this!

2. If you're a landlord of a single-family rental or duplex and don't live on the premises you are required to register the property.

To register, use one of two Rental Unit Registration forms, one **for Single Units** and one **for rental properties owners with more than one rental building**. Both of these forms are available for subscription to make sure you have the latest version.

You may also call us at 651-266-1900 to get a registration form.

If you are a landlord having trouble with a tenant, contact the St. Paul Association of Responsible Landlords at 651-647-6810.

040042

## Department of Neighborhood Housing and Property Improvement

### Rules and Procedures
(August 9, 2004)

I.   **Introduction**

II.  **Basic Rules Regarding Property Exteriors**

III. **Time Lines to Complete Work**

IV.  **Procedures**

    A.   **How will we use the new Excessive Consumption Fee Schedule and Rental Registration Revocation Ordinances?**

    B.   **When do we tag?**

    C.   **What are:**

        1.   **Correction Orders**

        2.   **Work Orders**

        3.   **Summary Abatement Orders**

        4.   **Pre-authorized Work Orders**

        5.   **Emergency Abatement Procedures**

    D.   **When do we give extensions?**

    E.   **When do we deviate from these rules?**

    F.   **When do we do "Field Finds"?**

    G.   **When do we condemn a building?**

    H.   **When do we bring a TRA case?**

V.   **Sanctions Schedule**

040043

## I. Introduction

There are two main reasons for having written rules and procedures. First, to put everyone on notice as to what the rules are and what is expected for compliance. In other words, we want the public to follow the rules. Second, our goal is to have consistent application of the rules by our staff so the public knows what to expect if the rules are not followed. In other words, we want our housing code inspectors to follow these rules.

At the outset it must be noted that the Department of Neighborhood Housing and Property Improvement is responsible for all residential single family homes and duplexes, both for interior and exterior, but only the exterior grounds and not building of commercial property. The Department is not responsible for interior of commercial structures and is not responsible for interiors of residential rental buildings containing 3 or more units. The latter is the responsibility of the Fire Department Certificate of Occupancy program. In April 2004 this department also became responsible for no dumping and no obstructions on the city's right-of-way.

Having said our goal is consistent application of these rules, it must be noted that it is not possible to have universal application of the housing code to every property, every day. We simply don't have enough inspectors or resources. If we issued a misdemeanor tag for every violation, every time, the court system would not be able to handle the volume.

This means there must be some discretion allowed our inspectors in applying these rules, to decide which cases to get to first, to decide which properties get the closest scrutiny, to sometimes attempt to achieve compliance in other ways than immediately issuing a work order or misdemeanor tag. Sometimes just a conversation with the property owner can achieve quick compliance.

In exercising this discretion, the Department of Neighborhood Housing and Property Improvement has established the following priorities:

1. Serious health and safety cases
2. Cleaning up "problem properties"
3. Garbage and nuisance violations
4. Falling down/dilapidated structures
5. Interior habitability has a higher priority than minor exterior violations
6. Structures with multiple violations get priority

These 6 priorities are not exhaustive, but reflect the type of cases we'll get to first and apply the highest scrutiny. By the end of the week we are usually able to get to all the other cases that have been called to our attention, such as fixing eaves, soffits, or repainting the porch.

Inherent in exercising this discretion, and in applying these priorities, it is not always possible to draw a bright line between where inspector discretion ends and consistent enforcement begins, but having a written set of rules, procedures and priorities is a good starting point. Please let me know your thoughts and comments.

Andy Dawkins, Director
Neighborhood Housing and Property Improvement
651-266-1927

040044

## II. Basic Rules Regarding Property Exteriors*

1.  Grass and weeds must be cut (8 inches is maximum height for lawns). Boulevard gardens generally must be under 36 inches but sometimes to allow for traffic safety the rule is 18 inches.

2.  Sidewalks must be passable - no overhanging branches/bushes
                                    - shoveled in the winter

3.  There can be no accumulated garbage; no brush piles.
    NOTE: Property owner is responsible for clean-up even if someone else dumped it.

4.  Garbage only in proper containers with covers.

5.  Clean-up all animal feces.

6.  Remove all graffiti.
    NOTE: Property owner is responsible even if someone else did the graffiti.

7.  Cars that are not in a garage must be:
    a) Properly licensed (no expired tabs over 90 days)
    b) Operable and secure (no broken out windows)
    c) Parked on approved surface (not grass)

8.  Firewood must be:    Elevated off the ground (not sit directly on the ground)
                         Stacked no higher then 5 feet
                         Stacked 10 feet away from house

9.  No unreasonable exterior storage.

10. Compost must be properly composted and stored.

11. No stagnant standing water.

12. No rodent infestation.

13. No broken windows.

14. No dilapidated or dangerous fences, garages, sheds or structures.

15. Sidewalks and stairs must be safe.

16. No "attractive nuisances" - anything that kids could be attracted to and perhaps hurt.

17. No hazards:    no open holes or wells
                   no jagged pipes
                   no open foundations
                   no dangerous trees or limbs
                   no abandoned refrigerators

040045

* For complete list of our Rules, see St. Paul Legislative Code, Chapters 34 & 45, or get copy of the "St. Paul

Resident Handbook."

### III. Time Lines to Complete Work*

| | |
|---|---|
| Large accumulation of rotting garbage** | 0-24 hrs. |
| Hazardous waste ** | 0-24 hrs. |
| Anything deemed hazardous, potentially dangerous or a serious threat to the public health, welfare or safety** | 0-24 hrs. |
| Drug Paraphernalia** | 0-24 hrs. |
| Rotting animal carcass** | 0-24 hrs. |
| Abandoned property accessible to children or conducive to illegal activity** | 0-24 hrs. |
| A fallen tree or limb with potential of causing damage or harm**. | 0-24 hrs. |
| Structure that has collapsed or in threat of collapsing** | 0-24 hrs. |
| Refrigerators, open containers, open holes, jagged pipes or something similar which could injure a child** | 0-24 hrs. |
| Snow or ice on public sidewalks** | 48 hours |
| Vehicles parked on unapproved surface (can only tag, not tow for this violation) | 0-4 days |
| Open sewer connections, broken sewer pipes** | 0-4 days |
| Garbage violations** | 72 hours |
| Uncut tall grass and/or noxious weeds** | 72 hours |
| Accumulated dog or other animal feces** | 4 days |
| Unsecured, inoperable or dangerous vehicle** | 4 days |
| Raw sewage** | 4 days |
| Standing stagnant water** | 4 days |
| Vermin or pest harborage and infestations** | 4 days |
| Discarded appliances which do not pose a hazard** | 4 days |
| Improper storage on the roof of a building** | 4 days |
| Rubbish/junk/yard waste/brush piles/overgrown bushes, trees, vines, etc**. | 4-7 days |
| Broken doors, windows, railings, etc. on the exterior | 4-7 days |
| Vehicles not currently licensed ** | 7-10 days |
| Unapproved compost storage ** | 7-10 days |
| Unapproved storage or excessive storage of materials and goods** | 7-10 days |
| Unapproved piles of firewood ** | 7-10 days |
| Graffiti** | 10 days |
| Deteriorated or dilapidated fences and accessory structures** | 7-30 days |
| Unsound, deteriorated, dilapidated garages & outbuildings which are not hazardous** | 7-30 days |
| Defective retaining walls, private sidewalks, walkways, stairs which are not hazardous**. | 7-30 days |
| Interior work generally. | 1-30 days |
| All other exterior work, such as caves, roofs, soffits, painting (generally 7-30 days, but depending upon the season up to 180 days- if we give a long compliance period, in some cases there will be a mid-point reinspection to make sure progress is being made so no extension will be necessary.) | 7-180 days |
| Lack of approved ground cover | 7-180 days |

* These time lines were set with the following thoughts in mind.  First, the law requires us to give the property owner a reasonable amount of time to complete the work depending upon the seriousness or danger of the situation. 72 hours, not including the day of inspection, is the minimum required by law, except when dangerous. Second, generally things that are due to the fault of the property owner ( and should never have happened in the first place) are given a short compliance period, and things that are not due to the property owner's fault ( such as damage caused by tenants or trespassers), or things that require a contractor to be hired, are given a longer compliance period.  The time lines are also based on the nature and severity of the violation.  Basic life-safety violations and nuisance violations are given the shortest time possible.

** This item can be subject to a summary abatement.  A Summary Abatement is used for anything that constitutes a nuisance and is where the City can send a work crew out to do the work if the property owner does not complete the work within the time line.  Generally, summary abatements are allowed for things that can be removed or eliminated, but not for improvements, such as painting, etc.

**IV. A. How will we use the new Excessive Consumption Fee Schedule and Rental Registration Revocation Ordinances**

In November, 2003 the Saint Paul City Council passed two new ordinances: Sec. 34.08 regarding charging fees for excessive consumption of code inspection services and Chapter 51 regarding rental registration revocation. When using the two new ordinances, NHPI will be guided by the following internal polices:

A.    <u>Excessive Consumption</u>

The primary objective of this ordinance is to establish a reinspection fee system that provides incentives for earliest possible compliance with the code and to recover departmental costs associated with extra-ordinary enforcement efforts that are required when an owner does not comply with an order in a timely manner. The following information explains both the fees and the policies associated with them. It is intended to help owners and the public understand the process. This should not be construed as a legal document.

Fee Schedule

| | |
|---|---|
| Any Reinspection with full compliance | FREE |
| 1st reinspection without compliance | $50 |
| 2nd reinspection without compliance | $75 |
| 3rd reinspection without compliance | $150 |
| Subsequent reinspection without compliance | $150 |
| 3rd founded violation in 12 months | $50 |
| 4th founded violation in 12 months | $75 |
| Subsequent founded violation in 12 months | $150 |

<u>General Policy</u>

1.    A property is a candidate for an excessive consumption bill whenever:

    a.)    The property is not compliant at the time of reinspection (after finding a violation and giving a reasonable time to comply), or

    b.)    Within a 12 month period there is a third (or more) initial inspection where a violation is found, and a violation was found at each of the prior initial inspections.

2.    This means we write-up every violation at the initial inspection (as opposed to waiting until the reinspection and calling it a second initial inspection.)

3.    If we do find a new violation at a reinspection (i,e., one that didn't exist at the time of the first

initial inspection), then we treat this as a second initial inspection (as well as a reinspection on the 1st issue):

4.  We will always wait a reasonable interval between inspections. Of course it depends upon the severity of the deficiency that needs correcting, but any interval of less than 2 weeks needs supervisor input. Letters must go out after each reinspection.

5.  A reinspection of an order with interior and exterior violations may be chargeable even if interior violations were not reinspected provided the <u>exterior violations were not corrected.</u> If the exterior violations are corrected, it would not be a chargeable reinspection IF the inspector was unable to verify any interior corrections, unless the owner broke the appointment.

6.  Even though a property is a candidate for excessive consumption, we will use discretion when charging for excessive consumption. These guidelines are to be used to determine whether to charge a reinspection fee. These are intended to be guidelines that will apply in typical situations. They are <u>NOT</u> intended to substitute for good judgment and common sense and are not a legal interpretation.

    a.)  Just because we're on a reinspection and there's non-compliance, that doesn't automatically mean we will send a bill -- we can grant extensions, and there can be reinspections with different compliance dates. If there are different compliance deadlines, and there's non-compliance both for the 1st deadline issue and the 2nd deadline issue, each starts with a $50 bill (rather than the 2nd starting with a $75 bill.)

    In cases where there are multiple orders being reinspected at the same time for one building, the chargeable reinspections should be noted on one of the orders along with the comment. The underlying principle is that we should not charge more than once for the same reinspection even if it is for multiple orders and that we should make certain that we charge the reinspection fee when appropriate.

    b.)  There will be situations where a property is a candidate for 2 bills. In these cases, the higher amount always overrides the lower amount. We never send 2 bills for the same inspection. For example: You go out on a reinspect and find non-compliance ($50), but you also find a new deficiency <u>and</u> this is the fourth new deficiency within 12 months ($75), then send the $75 bill.

    c.)  Choose between Summary Abatement §45.08 $50.00 and Excessive Consumption $50.00 (NOT BOTH!!) i.e. we could go to 2nd reinspection and skip Summary Abatement to save property owner cost of city work crew. But if the 2 prior summary abatements never resulted in a work order, then the 3rd in a year is an excessive visit. Also, a 1st or 2nd reinspection that resulted in a work order instead of an excessive consumption bill may still be considered excessive consumption later-on if the city work crew shows up and the violation is gone-on-arrival or done-by-owner.

    d.)  We can choose not to send a bill when there is a legitimate mid-stream change in ownership and the new owner is responsive.

    If there is a documented change in ownership after chargeable reinspections, the charges for those reinspections stay with the property. The new owner should be informed by the

inspector of the charges, and that fact should be noted on the chronological. But the new owner can get his/her own two initials in 12 months without charge - provided it's a legitimate change in ownership.

    e.)    We will generally not send a bill when

        (i)    It's a court-ordered reinspect for Tenant Remedies Action verification hearing or a legislative hearing officer ordered reinspect.

        (ii)    Routine vacant building inspection without finding violations.

        (iii)    Owner is seeking clarification or our opinion on progress (especially if substantial compliance)

        (iv)    We go on a trash complaint and find the problem "abated." This has to be treated as "unfounded" to avoid adding-up to three violations in a year. Ditto with regards to snow walks. This also means we can no longer enter "no action taken." It's either "founded" or "unfounded."

        (v)    It's tenant caused violations and landlord is responsive.

        (vi)    Reinspections on orders issued to occupants shall not be charged to the owner and are considered unrecouped costs.

7.    If we chose not to charge excessive consumption on a first non-compliant reinspection, but then found non-compliance on the second reinspection, the charge starts at $75, not $50.

8.    Supervisors can always waive an excessive consumption bill, especially if there's a hardship involved.

9.    Excessive Consumption is appealable at time of correction order/correction notice and at the time the City Council considers assessment. If a bill has already been sent and then the property owner wins an appeal on the original correction notice, then the supervisor will waive the bill.

10.    All bills unpaid after 30 days will be sent to Department of Financial Services to be assessed to the property owner's property taxes.

11.    If the property is a rental registration property and the bill is not paid within 30 days, this will trigger a Notice of Intent to Revoke Registration.

12.    We will keep paper and photo trail:

    a.)    We did wait until day after compliance deadline.

    b.)    If we are going to send an excessive consumption bill, then we need to take a photo of one of the violations at the time of the reinspection (or at the time of the initial inspection if a third deficiency in 12 months.)

    c.)    We did send confirming letter

| Regarding non-compliance = | $50.00 |
| Next re-check            = | (Date) |

**040049**

And will cost           =         $75.00

Regarding missed appointment
Etc.

B.   Rental Registration

1.   The ordinance allows us to send a Notice of Intent to Revoke Registration whenever there is:

    a)     2nd non-compliant recheck
    b)     4th founded violation in 12 months
    c)     1st documented nuisance activity
    d)     any outstanding code violation
    e)     unpaid excessive consumption bill

2.   We will exercise discretion on sending Notice of Intent to Revoke

    a)     Not when tenant caused

          Except repeating tenant caused

          Or because landlord not responsive

    b)     Because of staffing limitations, we will prioritize based on numerosity of problems and severity of problems.

          Priority List

          i)     Tenant health and safety
          ii)    Problem Property
          iii)   Dilapidation
          iv)   Garbage/Rubbish

3.   After sending the Notice of Intent to Revoke, the landlord will be given the opportunity to come up with an acceptable abatement plan prior to the City Council taking action on the revocation.

4.   The Notice of Intent to Revoke is appealable to the City Coouncil's Legislative Hearing officer.

5.   The ordinance allows us to demand an interior inspection of a single family or duplex rental property whenever excessive consumption has occurred or rental registration has been revoked.

C.   Landlord Notice

1.   Inspectors should notify owners at all appropriate points in the process of the possibility of reinspection fees. Each time an inspector reinspects a property and finds non-compliance of an order, they should send out a letter to the owner stating that a reinspection was made and the violations still exist.

2.   Always attempt to notify landlord in advance of interior inspection. (If they are in rental registration). Except that when it's a tenant requested inspection (as opposed to an excessive consumption triggered inspection), we will not notify the landlord in advance because of data privacy issues.

3.   Always attempt to notify landlord once official problem property.

**040050**

### IV. B. When Do We Tag

A misdemeanor criminal tag can have serious penalties, up to $1,000 fine and 90 days in jail. The St. Paul City Attorney and the Ramsey County District Court have agreed to treat our tags as serious offenses. In part V. there is a "Sanctions Schedule" that the Court will use in our cases.

It is important to remember that even though you may be given a certain amount of time to complete the work from an inspection, you can still be tagged for having the problem in the first place. The Judge may inquire if you have rectified the problem, but you still can be found guilty even though you cleaned it up.

Here are the situations when we will issue a misdemeanor tag:

1.  <u>When there is a prior history of code violations.</u> If this is the second time we've had to write you a correction order or summary abatement within the past 2 years for the same or a similar problem, you may be tagged. If this is the third time we've had to write a correction order or summary abatement in the past 2 years, it doesn't matter if it's the same or a similar thing. If you are a landlord dealing with problem tenants and you are responsive to abatement orders, then you will not receive a tag even if it's a second or third occurrence.*

2.  <u>When there has been non-compliance</u> with a correction order – in the past, we issued a tag; now we will more likely charge excessive consumption instead. But we can do both.

3.  <u>When the violation is serious</u> or egregious and future such problems must be deterred.

4.  <u>When the subject property or another property of your's has been determined to be a "problem property,"</u> we will issue tags regardless of past history or compliance. A problem property can be defined as where there are both building maintenance issues and nuisance behavior issues.

5.  <u>When you are caught up in a "sweep."</u> Every so often different neighborhoods will be flyered announcing that we will be doing a "sweep" in a few days. If you don't take care of the problems within the time given for compliance, you will be tagged.

6.  <u>When your neighborhood is part of a community cleanup program</u> and you ignore your neighbors request to voluntarily cleanup. (Good Neighbor Program, etc.)

7.  <u>Other specific situations that result in tags:</u> we also issue tags for other violations of the city's legislative code, such as
    - a) occupancy of a condemned building and/or occupying a vacant registered building
    - b) allowing occupancy of a condemned building
    - c) failure to register residential rental buildings with 1 or 2 units
    - d) failure to post ownership notice
    - e) failure to pay the annual vacant building fee

---

* It is a landlord's defense to a misdemeanor tag if the landlord proves:
    a. There is a written lease provision that requires tenants to follow the provisions of state and local laws related to housing codes; and
    b. The landlord effectively communicated such a provision to the tenants; and
    c. The landlord took reasonable steps to discover any violations caused by the tenants; and
    d. The landlord effectively enforced the lease provisions when violations were discovered.

040051