Part V - Rental Registration

The City Council report on chronic problem properties said that the Rental Registration Program was a program in name only and will remain so "until the Administration takes this ordinance seriously". This has now happened.

Similarly, the excessive consumption ordinance is now being enforced for the first time. [Click here to get to NHPI's How-To-Guide and see how we're enforcing the Rental Registration and Excessive Consumption ordinances]

Chart 6 - Dramatic progress of rental registrations

| Year | Property Type | Count | | Status | | Amount |
|------|---------------|-------|---|--------|---|--------|
| Yr. 2001: | Single Family Properties | 1,675 | paid | | $ | 38,060 |
| | Duplex Properties | 1,657 | | | $ | 64,558 |
| | Total | 3,332 | | | $ | 102,618 |
| Yr. 2002: | Single Family Properties | 1,746 | | | $ | 39,641 |
| | Duplex Properties | 1,695 | | | $ | 67,221 |
| | Total | 3,441 | | | $ | 106,862 |
| Yr. 2003: | Single Family Properties | 2,486 | | | $ | 59,986 |
| | Duplex Properties | 2,381 | | | $ | 99,594 |
| | Total | 4,867 | | | $ | 159,580 |
| Yr. 2004: | Single Family Properties | 2,895 | | | $ | 64,440 |
| | Duplex Properties | 2,652 | | | $ | 108,550 |
| | Total | 5,547 | paid | | $ | 172,990 |
| | Known properties not paying | 183 | not paid | | $ | 5,810 |
| | **Grand Total** | **5,730** | | | **$** | **178,800** |

A landlord's rental registration certificate can be revoked for non-payment of excessive consumption fees, for operating a nuisance property and for outstanding code violations.

In 2004:

> 1,304 property owners were billed for excessive consumption
> 280 of the 1,304 were in rental registration
> 163 of the 280 voluntarily paid
> 17 of the 280 are not yet 90 days in arrears
> 100 of the 280 are over 90 days in arrears
> 92 of the 100 have been sent Notice of Intent to Revoke letters

In 2004 we also sent 24 Notices of Intent to Revoke for operating a nuisance property and 2 for outstanding code violations.

Of the 118 total Notices of Intent to Revoke sent in 2004, 35 were eventually revoked by City Council vote and the other 83 arrived at some settlement with the Director of Neighborhood Housing and Property Improvement. Of the 35 revokes, 5 were for nuisance conditions. Of the 35 that were revoked, 11 have been reinstated.

040092

Part VI - Truth-in-Sale of Housing

|  |  | 2003 | 2004 |
|---|---|---|---|
| **1.** | **Total Number of Inspections** | | |
| | First Quarter 03/31/04 | 1069 | 1143 |
| | Second Quarter 06/30/04 | 1696 | 1775 |
| | Third Quarter 09/30/04 | 1665 | 1728 |
| | Fourth Quarter 12/31/04 | 1024 | 1126 |
| | | 5004 | 5772 |

**2004 Budgeted Revenue:**                    $134,363

| | Revenue by Source | 2003 Revenue | 2004 Revenue |
|---|---|---|---|
| **2.** | **Revenue by Source** | **2003 Revenue** | **2004 Revenue** |
| | Evaluator Reports | $127,563 | $146,820 |
| | Late Reports | $0 | $3,900 |
| | Evaluator Licenses | $4,300 | $4,300 |
| | Examination Fees | $2,500 | $5,700 |
| | Other/Misc. | $0 | $17 |
| | **Total Revenue** | **$134,363** | **$156,837** |

| | Spending | 2004 Budget | Actual |
|---|---|---|---|
| **3.** | **Spending** | **2004 Budget** | **Actual** |
| | Salaries/Personal Services | $117,768 | $115,177 |
| | Services | $14,395 | $12,905 |
| | Credit Card Fees | $3,425 | $ 2,788 |
| | Supplies | $2,200 | $ 88 |
| | Transfer to GF (pay GF for supplies/services | $0 | $ 1,917 |
| | **Total Spending** | **$134,363** | **$130,087** |

040093

Part VII - Vacant Buildings

One of the most significant arson deterrents is the proper care and maintenance of vacant buildings. To quote St. Paul Fire Marshall Steve Zaccard "The City of Saint Paul maintains its vacant building stock VERY WELL. Compared to any other city, our vacant buildings are among the best maintained and least likely to be the target of an arsonist. The registration, boarding up, property clean up, monitoring, and rehabilitation or demolition that you do are state-of-the-art. I'm sure you guys don't get a lot of praise for your tireless work on vacant buildings. As far as fire safety and arson control, you certainly should be commended for your work. We don't want to have a repeat of the Worchester, MA fire. Thanks, guys."

In 2002 Year-End-Report we recommended increasing the Vacant Building fee to pay more of the costs of the program. The City Council did raise the fee from $200 to $250 effective February 1, 2004, but this will still not adequately cover the program costs. In 2005 we are considering moving to a graduated fee structure.

In 2003 the city collected $39,000 in fees but the program cost $291,139.

In 2004 the city collected $52,000 in fees but the program cost $350,900.

Chart 7 - 2004 Statistical Report for Vacant Buildings

|  | First | Second | Third | Fourth | 2004 Totals | 2003 Totals | 2002 Totals |
|---|---|---|---|---|---|---|---|
| New Vacant Building Identified Buildings Monitored (active files) Building Files Closed | 62 397 48 | 96 439 54 | 100 465 74 | 83 476 72 | 341 --- 248 | 261 --- 231 | 254 --- 302 |
| Buildings Razed by City Buildings Razed by Owner Buildings Rehabed/Occupied | 0 0 48 | 2 2 50 | 2 9 63 | 3 11 58 | 7 22 219 | 8 31 192 | 20 21 236 |
| Buildings Brought before Council "Order to Abates" Issued | 4 5 | 4 9 | 9 10 | 9 5 | 26 29 | 17 23 | 30 27 |

040094

Part VIII - Tenant Remedies Action $200,000 Revolving Fund

| $ | 200,000.00 | Balance at Inception |
|---|---|---|
| - | 8,608.40 | for 123 Acker (100% recoverable[1]) |
| - | 2,959.40 | for 786 Aurora (of which $2,705 is recoverable[2]) |
| $ | 188,432.20 | Balance at End of 7th Quarter |

| $ | 188,432.20 | Beginning of 8th Quarter Balance |
|---|---|---|
| - | 754.54 | motel bill for 507 Van Buren[3] |
| - | 538.32 | motel bill for 729 Aurora[4] |
| - | 1,713.00 | utility bill for 661 Payne[5] |
| - | 4,915.24 | for 661 Payne (of which $4,535.24 is recoverable) |
| - | 11,667.39 | for 729 Aurora (of which $11,222.39 is recoverable) |
| $ | 168,843.71 | Balance at end of 8th Quarter |

Note that of the $31,156.29 that has been spent inception to date, fully $29,322.35 will revolve via tax assessment and only $1,833.94 is left to collect by other means.

Part IX - General Fund Spending

[1] City Council has voted to assess to the property owner's property taxes and money will be collected and revolved in May 2006.

[2] $254.40 was for costs of administration and not assessable. The remaining $2,705 was voted by Council to 2006 assessment.

[3] This first motel bill was paid per a telephone conference call between the plaintiff's lawyers and the Family Housing Fund. This payment is not assessable.

[4] This second motel bill was authorized by Andy Dawkins based on exigent circumstances. The $538.32 was reduced to a judgement versus the landlord and if collected it will be credited to the fund.

[5] This utility bill payment was eventually lumped in with the other payment for 661 Payne. However, generally we'll try to pay utility arrears at the beginning of the TRA administratorship and the other repair costs at the end.

040095

Chart 8



**Annual Budget 2004**

Neighborhood
Housing and
Property
Improvement

Total Budget
$1,468.8 K

| In | | | | |
|---|---|---|---|---|
| **Salaries & Fringes** | | | | |
| | 12.5 | Inspectors | $796,424 | 54% |
| | 4.5 | Clerical | $227,692 | 16% |
| | 2 | Supervisors | $160,108 | 11% |
| | .8 | Director | $82,034 | 6% |
| | | Overtime | $32,692 | 2% |
| | | | $1,298,951 | 88% |
| **Transportation** | | | | |
| | | Mileage & Leases | $67,316 | 5% |
| **Overhead** | | | | |
| | | Communications | $11,079 | 1% |
| | Office Lease & Maintenance | | $74,739 | 5% |
| | | Services & Supplies | $16,703 | 1% |
| | | | $1,468,788 | 100% |
| **Out** | | | | |
| City Attorney | | Summary Nuisance Abatement | | |
| Vacant Buildings | | Fire Department - C of O for Apartments | | |
| Rental Registration | | Truth-in-Sale of Housing | | |

Chart 9

040036



**Cost per Inspection**
**2004**

Neighborhood
Housing and
Property
Improvement

Supervisors, $4.70

Clerical, $8.69

Inspectors, $23.39

Cost per Inspection
$43.15

Notes:
- Cost per inspection includes Initial and Re-Inspections
- Total cost per inspection is $1,468.8 K over 34,048 visits
- Communications = cell phones
- Transportation = cost of gas, mileage, and vehicle leases

040097

Part X - 2004 Accomplishments/2005 Goals

Prologue:

2004 was a great year, starting with the successful implementation of the new excessive consumption/rental registration revocation ordinances, ending with a favorable Star Trib editorial (12-14-04) saying code enforcement in St. Paul was cutting edge, and included Mayor Randy Kelly's mid-year budget address in which he said, "Rethinking how we do the job has made a significant difference in our neighborhood housing and property improvement department.  Code enforcement efforts have yielded twice as much work accomplished compared to two years ago, with less staff and less money, largely because inspector productivity has more to do with attitude, technique and cooperation than with budgeted dollars."

In 2004 St. Paul moved from being a mostly complaint-based system to a more proactive patrol system which includes a substantial amount of surveying/patrolling/ field-finding, without getting behind in re-checks or creating a backlog in closing old files. (See Part II Supra.)

Moving to a pro-active patrol system is a good thing - not only for obvious reasons such as a cleaner city, less blight, greater safety, higher property values and preserving affordable housing - but also because it undoes racism by reducing the possibility of one group manipulating the system against another group as to which properties get called-in.

Moving to a proactive system without creating a backlog was made possible because of innovations and efficiencies.  The number of rechecks inspectors had to go out on was down because the amount of voluntary compliance was up.  Voluntary compliance was up for several reasons but chiefly because the new excessive consumption fee system worked like "sticker shock," just as was anticipated (See Part III Supra.).  In the past our orders to correct violations were too often ignored.  However, starting January 1, 2004, reinspections without compliance cost the property owner money that has to be paid because otherwise it gets assessed to property taxes.  In 2003 we opened 10,009 new files and of those that closed, 3,433 took more than one reinspect to get closure (compliance); whereas in 2004 we opened 11,541 new files and of those that closed, 3,252 took more than one reinspect to close. (See charts 1 and 4B.)

The best practice of achieving voluntary compliance freed-up inspectors to do an unprecedented blanketing of the City with orders which will result in stemming blight and fixing-up our neighborhoods. St. Paul Code Enforcement is a veritable best practices list.  In addition to the starred (*) items below, keep in mind that in the previous year (2003) we started a number of best practices that didn't make this year's list but continue to be highly successful.  These would be creation of a "problem property unit," using community policing and community prosecuting techniques, creating a $200,000 Tenant Remedies Action revolving repair fund, and instituting a performance measurement system (See chart 2).  No wonder Minneapolis and other cities are starting to copy St. Paul.

040093

| 2004 Accomplishments<br>(An * indicates Best Practice) | 2005 Goals |
|---|---|

1. Excessive Consumption Fee* system established................................................................. ........... (A) Get state law changed to clarify we can use a Tenants Remedies Action law suit to get long-standing vacant buildings repaired.

2. Went from a mostly complaint-based system to a more proactive patrol system*.

3. Rental Registration Certificate* revocation process implemented. Landlords are being held accountable for properly managing their ........... (B) Successful resolution of federal law suit and properties.... vindication of our new aggressive, consistent, code enforcement strategies.

4. Heightened inspection standards: Inspectors have begun to write-up every violation at the property, to write-up all the "same or worse" near-by properties, ........... (C) Reduce the number of properties on the "5 and to take part of each day to patrol their areas......... Day Late List" and the "To Do's List" and we still need to meet our 2003 goal of increasing the

5. Produced a "How-To-Guide"* for using our number of interior inspections. services - See our website at http://www.ci.stpaul.mn.us/depts/code_enforcement/ .

6. Programmed a way for citizens to submit and track progress* of complaints on-line - See our website at ........... (D) Get an on-line survey instrument to see how http://www.ci.stpaul.mn.us/depts/code_enforcement/ we're doing in the eyes of our customers.

7. Transfer of two right-of-way inspectors from Public Works to NHPI and incorporating certain new duties into NHPI routine - thus reducing the times when two inspectors from two different city ........... (E) We still need to develop an efficient way of departments have to go to the same property.............. removing illegal signs from utility poles, and work with the District Councils to find some way of maintaining, even beautifying, city boulevards that are difficult to keep mowed, trimmed and neat. At a minimum we need to increase inspector watchfulness of these issues.

040093

8. "Alley Trash Letter" instituted as way to reduce the number of days garbage is on the ground before pick-up - Any citizen can call 266-8989 (the Citizens Service Office) anytime and report alley trash. In the past an inspector's visit was the first step; now a letter goes out immediately, and 72 hours later an initial inspection can result in an immediate work order to the city clean-up crew.......................................... (F)  Develop a measurement tool to determine "days on the ground," and decide if the Alley Trash Letter is a best practice* or not. (In other words, the goal is to reduce the number of days garbage is on the ground - Determine if this worked)

9.  A protocol has been developed to deal with over-occupancy and college-student party houses.

10.  Regular Tuesday morning training sessions for inspectors including 6 weeks of intensive technical training on how to do superior level inspecting.......... ............ (G) Purchase of digital cameras for inspectors.

11.  Increased coordination and communication with the Police Department - including the first combined "Mobil Enforcement Tactics" or MET operation............................................................................... (H) There's still work to be done on creating an easy reporting system for cops on the beat to report nuisances to code enforcement, and for landlords to get easy access to info on their tenants' arrests. We need to do more "METS" and begin some "landlord compacts" whereby the responsible landlords in a certain neighborhood buy-out the irresponsible landlords.

12.  Passage by state legislature of new law allowing municipalities assessing authority for painting exteriors of structures...................................................

........... (I) We need to implement this new law and get some houses painted that have been needing a paint job for years.

13.  Continued development of "Good Neighbor Program"* particularly on St. Paul's North End as a means of achieving voluntary compliance..................

........... (J) The Good Neighbor program needs to be successful in more than just St. Paul's North End. The District 5 idea of "deputizing" citizens is a promising start.

040100

14. An ordinance was enacted requiring all rental registration certificates be posted by the front door - visible from the outside................................................................ ........... (K) We need to get neighbors involved in identifying non-registered problem rental properties. In 2002 we estimated there were 3,000 non-owner occupied duplexes in St. Paul; by the close of 2004 we had 2,652 registered - meeting our 90% compliance goal. However, in 2002 we estimated 6,000 non-owner occupied single family structures, and by close of 2004 only 2,895 were registered. Was our 6,000 estimate accurate? Are there 3,105 scofflaw landlords out there? Or are many of these 3,105 empty or occupied by the owner's family?

15. Our Correction Notice was re-written to include specific telephone numbers to call for help finding resources. This builds on last year's development of a brochure and resource list* as a best practice to achieve voluntary compliance........................................ ........... (L) Our web site needs to be updated and our brochure rewritten.

16. Completed successful demonstration project of what it means to have an "ombudsperson" call on homeowners who have not complied with our orders to find out why (language barriers? mental incapacity? financial inability?) and connect these homeowners to other resources. This pilot project was then turned into a foundation proposal for the non-profit community to implement............................ ........... (M) Get the proposal funded, implemented, and determine its success at being another best practice* way to get voluntary compliance.

17. By year's end, the Mayor and City Council recognized the progress here at NHPI and provided money for a new hire - thus meeting Goal Y from the 2003 year-end assessment: "Now that we know what we're doing and doing it well, get to a new hire"........  ........... (N) In response to an inspector job profile study, re-organize department to include a promotional system by creating two inspector classes, rewarding the best inspectors with more pay, but expecting more success with chronics, with TRA's, with getting inside to do interiors and with tackling whole blocks where violations are prevalent.

O) We need to explore using the water utility's lead pipes replacement program as a model for how property owners can get fix-up funds that can be paid back incrementally through assessment.

040101

**Department of Neighborhood Housing and Property Improvement**

<u>**Rules and Procedures**</u>
**(January 1, 2004)**

I.      **Introduction**

II.     **Basic Rules Regarding Property Exteriors**

III.    **Timelines to Complete Work**

IV.    **Procedures**

    A.    **How will we use the new Excessive Consumption Fee Schedule and Rental Registration Revocation Ordinances?**

    B.    **When do we tag?**

    C.    **What are:**

        1.    **Correction Orders**

        2.    **Work Orders**

        3.    **Summary Abatement Orders**

        4.    **Pre-authorized Work Orders**

        5.    **Emergency Abatement Procedures**

    D.    **When do we give extensions?**

    E.    **When do we deviate from these rules?**

    F.    **When do we do "Field Finds"?**

    G.    **When do we condemn a building?**

    H.    **When do we bring a TRA case?**

V.     **Sanctions Schedule**

040103

# I. Introduction

There are two main reasons for having written rules and procedures. First, to put everyone on notice as to what the rules are and what is expected for compliance. In other words, we want the public to follow the rules. Second, our goal is to have consistent application of the rules by our staff so the public knows what to expect if the rules are not followed. In other words, we want our housing code inspectors to follow these rules.

At the outset it must be noted that the Department of Neighborhood Housing and Property Improvement is responsible for all residential single family homes and duplexes, both for interior and exterior, but only the exterior grounds and not building of commercial property. The Department is not responsible for interior of commercial structures and is not responsible for interiors of residential rental buildings containing 3 or more units. The latter is the responsibility of the Fire Department Certificate of Occupancy program.

Having said our goal is consistent application of these rules, it must be noted that it is not possible to have universal application of the housing code to every property, every day. We simply don't have enough inspectors or resources. If we issued a misdemeanor tag for every violation, every time, the court system would not be able to handle the volume.

This means there must be some discretion allowed our inspectors in applying these rules, to decide which cases to get to first, to decide which properties get the closest scrutiny, to sometimes attempt to achieve compliance in other ways than immediately issuing a work order or misdemeanor tag. Sometimes just a conversation with the property owner can achieve quick compliance.

In exercising this discretion, the Department of Neighborhood Housing and Property Improvement has established the following priorities:

1. Serious health and safety cases
2. Cleaning up "problem properties"
3. Garbage and nuisance violations
4. Falling down/dilapidated structures
5. Interior habitability has a higher priority than minor exterior violations
6. Structures with multiple violations get priority

These 6 priorities are not exhuastive, but reflect the type of cases we'll get to first and apply the highest scrutiny. By the end of the week we are usually able to get to all the other cases that have been called to our attention, such as fixing eaves, soffits, or repainting the porch.

Inherent in exercising this discretion, and in applying these priorities, it is not always possible to draw a bright line between where inspector discretion ends and consistent enforcement begins, but having a written set of rules, procedures and priorities is a good starting point. Please let me know your thoughts and comments.

---

Andy Dawkins, Director
Neighborhood Housing and Property Improvement
651-266-1927

## II. Basic Rules Regarding Property Exteriors*

1. Grass and weeds must be cut (8 inches is maximum height for lawns).

2. Sidewalks must be passable - no overhanging branches/bushes
                                    - shoveled in the winter

3. There can be no accumulated garbage; no brush piles.
   NOTE: Property owner is responsible for clean-up even if someone else dumped it.

4. Garbage only in proper containers with covers.

5. Clean-up all animal feces.

6. Remove all graffiti.
   NOTE: Property owner is responsible even if someone else did the graffiti.

7. Cars that are not in a garage must be:
   a) Properly licensed (no expired tabs over 90 days)
   b) Operable and secure (no broken out windows)
   c) Parked on approved surface (not grass)

8. Firewood must be:    Elevated off the ground (not sit directly on the ground)
                        Stacked no higher then 6 feet
                        Stacked 10 feet away from house

9. No unreasonable exterior storage.

10. Compost must be properly composted and stored.

11. No stagnant standing water.

12. No rodent infestation.

13. No broken windows.

14. No dilapidated or dangerous fences, garages, sheds or structures.

15. Sidewalks and stairs must be safe.

16. No "attractive nuisances" - anything that kids could be attracted to and perhaps hurt.

17. No hazards:    no open holes or wells
                   no jagged pipes
                   no open foundations
                   no dangerous trees or limbs
                   no abandoned refrigerators

* For complete list of our Rules, see St. Paul Legislative Code, Chapters 34 & 45, or get copy of the "St. Paul Resident Handbook."

040104

### III Time Lines to Complete Work*

| | |
|---|---|
| Large accumulation of rotting garbage** | 0-24 hrs. |
| Hazardous waste ** | 0-24 hrs. |
| Anything deemed hazardous, potentially dangerous or a serious threat to the public health, welfare or safety** | 0-24 hrs. |
| Drug Paraphernalia** | 0-24 hrs. |
| Rotting animal carcass** | 0-24 hrs. |
| Abandoned property accessible to children or conducive to illegal activity** | 0-24 hrs. |
| A fallen tree or limb with potential of causing damage or harm** | 0-24 hrs. |
| Structure that has collapsed or in threat of collapsing** | 0-24 hrs. |
| Refrigerators, open containers, open holes, jagged pipes or something similar which could injure a child** | 0-24 hrs. |
| Snow or ice on public sidewalks** | 48 hours |
| Vehicles parked on unapproved surface (can only tag, not tow for this violation) | 0-4 days |
| Open sewer connections, broken sewer pipes** | 0-4 days |
| Accumulated dog or other animal feces** | 4 days |
| Garbage violations** | 4 days |
| Uncut tall grass and/or noxious weeds** | 4 days |
| Unsecured, inoperable or dangerous vehicle** | 4 days |
| Raw sewage** | 4 days |
| Standing stagnant water** | 4 days |
| Vermin or pest harborage and infestations** | 4 days |
| Graffiti** | 4 days |
| Discarded appliances which do not pose a hazard** | 4 days |
| Improper storage on the roof of a building** | 4 days |
| Rubbish/junk/yard waste/brush piles/overgrown bushes, trees, vines, etc**. | 4-7 days |
| Broken doors, windows, railings, etc. on the exterior | 4-7 days |
| Vehicles not currently licensed ** | 7-10 days |
| Unapproved compost storage ** | 7-10 days |
| Unapproved storage or excessive storage of materials and goods** | 7-10 days |
| Unapproved piles of firewood ** | 7-10 days |
| Deteriorated or dilapidated fences and accessory structures** | 7-30 days |
| Unsound, deteriorated, dilapidated garages & outbuildings which are not hazardous** | 7-30 days |
| Defective retaining walls, private sidewalks, walkways, stairs which are not hazardous** . | 7-30 days |
| Lack of approved ground cover | 7-30 days |
| Interior work generally. | 1-30 days |
| All other exterior work, such as eaves, roofs, soffits, painting (generally 7-30 days, but depending upon the season up to 180 days- if we give a long compliance period, in some cases there will be a mid-point reinspection to make sure progress is being made so no extension will be necessary.) | 7-180 days |

* These time lines were set with the following thoughts in mind. First, the law requires us to give the property owner a reasonable amount of time to complete the work depending upon the seriousness or danger of the situation. 72 hours, not including the day of inspection, is the minimum required by law, except when dangerous. Second, generally things that are due to the fault of the property owner ( and should never have happened in the first place) are given a short compliance period, and things that are not due to the property owner's fault ( such as damage caused by tenants or trespassers), or things that require a contractor to be hired, are given a longer compliance period. The time lines are also based on the nature and severity of the violation. Basic life-safety violations and nuisance violations are given the shortest time possible.

** This item can be subject to a summary abatement. A Summary Abatement is used for anything that constitutes a nuisance and is where the City can send a work crew out to do the work if the property owner does not complete the work within the time line. Generally, summary abatements are allowed for things that can be removed or eliminated, but not for improvements, such as painting, etc.

### IV. A. How will we use the new Excessive Consumption Fee Schedule and Rental Registration Revocation Ordinances

In November, 2003 the Saint Paul City Council passed two new ordinances: Sec. 34.08 regarding charging fees for excessive consumption of code inspection services and Chapter 51 regarding rental registration revocation. When using the two new ordinances, NHPI will be guided by the following internal polices:

A.   Excessive Consumption

The primary objective of this ordinance is to establish a reinspection fee system that provides incentives for earliest possible compliance with the code and to recover departmental costs associated with extra-ordinary enforcement efforts that are required when an owner does not comply with an order in a timely manner. The following information explains both the fees and the policies associated with them. It is intended to help owners and the public understand the process. This should not be construed as a legal document.

Fee Schedule

| | |
|---|---|
| Any Reinspection with full compliance | FREE |
| 1st reinspection without compliance | $50 |
| 2nd reinspection without compliance | $75 |
| 3rd reinspection without compliance | $150 |
| Subsequent reinspection without compliance | $150 |
| 3rd founded violation in 12 months | $50 |
| 4th founded violation in 12 months | $75 |
| Subsequent founded violation in 12 months | $150 |

General Policy

1.   A property is a candidate for an excessive consumption bill whenever:

a.)   The property is not compliant at the time of reinspection (after finding a violation and giving a reasonable time to comply), or

b.)   Within a 12 month period there is a third (or more) initial inspection where a violation is found, and a violation was found at each of the prior initial inspections.

2.   This means we write-up every violation at the initial inspection (as opposed to waiting until the reinspection and calling it a second initial inspection.)

3.   If we do find a new violation at a reinspection (i,e., one that didn't exist at the time of the first initial inspection), then we treat this as a second initial inspection (as well as a reinspection on the 1st issue):

4.   We will always wait a reasonable interval between inspections. Of course it depends upon the severity of the deficiency that needs correcting, but any interval of less than 2 weeks needs supervisor input. Letters must go out after each reinspection.

5.   A reinspection of an order with interior and exterior violations may be chargeable even if interior violations were not reinspected provided the exterior violations were not corrected. If the exterior violations are corrected, it would not be a chargeable reinspection IF the inspector was unable to verify any interior corrections, unless the owner broke the appointment.

6.   Even though a property is a candidate for excessive consumption, we will use discretion when charging for excessive consumption. These guidelines are to be used to determine whether to charge a reinspection fee. These are intended to be guidelines that will apply in typical situations. They are NOT intended to substitute for good judgment and common sense and are not a legal interpretation.

   a.)   Just because we're on a reinspection and there's non-compliance, that doesn't automatically mean we will send a bill -- we can grant extensions, and there can be reinspections with different compliance dates. If there are different compliance deadlines, and there's non-compliance both for the 1st deadline issue and the 2nd deadline issue, each starts with a $50 bill (rather than the 2nd starting with a $75 bill.)

      In cases where there are multiple orders being reinspected at the same time for one building, the chargeable reinspections should be noted on one of the orders along with the comment. The underlying principle is that we should not charge more than once for the same reinspection even if it is for multiple orders and that we should make certain that we charge the reinspection fee when appropriate.

   b.)   There will be situations where a property is a candidate for 2 bills. In these cases, the higher amount always overrides the lower amount. We never send 2 bills for the same inspection. For example: You go out on a reinspect and find non-compliance ($50), but you also find a new deficiency and this is the fourth new deficiency within 12 months ($75), then send the $75 bill.

   c.)   We have to choose between Summary Abatement §45.08 $50.00 and Excessive Consumption $50.00 (NOT BOTH!!) i.e. we could go to 2nd reinspection and skip Summary Abatement to save property owner cost of city work crew. But if the 2 prior summary abatements never resulted in a work order, then the 3rd in a year is an excessive visit.

   d.)   We can choose not to send a bill when there is a legitimate mid-stream change in ownership and the new owner is responsive.

      If there is a documented change in ownership after chargeable reinspections, the charges for those reinspections stay with the property. The new owner should be informed by the inspector of the charges, and that fact should be noted on the chronological. But the new owner can get his/her own two initials in 12 months without charge - provided it's a legitimate change in ownership.

e.)   We will generally not send a bill when

   (i)    It's a court-ordered reinspect for Tenant Remedies Action verification hearing or
          a legislative hearing officer ordered reinspect.

   (ii)   Routine vacant building inspection without finding violations.

   (iii)  Owner is seeking clarification or our opinion on progress (especially if substantial
          compliance)

   (iv)   We go on a trash complaint and find the problem "abated." This has to be treated
          as "unfounded" to avoid adding-up to three violations in a year.  Ditto with
          regards to snow walks.  This also means we can no longer enter "no action taken."
          It's either "founded" or "unfounded."

   (v)    It's tenant caused violations and landlord is responsive.

   (vi)   Reinspections on orders issued to occupants shall not be charged to the owner and
          are considered unrecouped costs.

7.   If we chose not to charge excessive consumption on a first non-compliant reinspection, but then
     found non-compliance on the second reinspection, the charge starts at $75, not $50.

8.   Supervisors can always waive an excessive consumption bill, especially if there's a hardship
     involved.

9.   Excessive Consumption is appealable at time of correction order/correction notice and at the time
     the City Council considers assessment.  If a bill has already been sent and then the property owner
     wins an appeal on the original correction notice, then the supervisor will waive the bill.

10.  All bills unpaid after 30 days will be sent to Department of Financial Services to be assessed to
     the property owner's property taxes.

11.  If the property is a rental registration property and the bill is not paid within 30 days, this will
     trigger a Notice of Intent to Revoke Registration.

12.  We will keep paper and photo trail:

     a.)   We did wait until day after compliance deadline.

     b.)   If we are going to send an excessive consumption bill, then we need to take a photo of one
           of the violations at the time of the reinspection (or at the time of the initial inspection if
           a third deficiency in 12 months.)

     c.)   We did send confirming letter

           Regarding non-compliance =      $50.00
           Next re-check             =      (Date)
           And will cost             =      $75.00

           Regarding missed appointment
           Etc.                                         040103

B.   Rental Registration

    1.   The ordinance allows us to send a Notice of Intent to Revoke Registration whenever there is:

        a)   2nd non-compliant recheck
        b)   4th founded violation in 12 months
        c)   1st documented nuisance activity
        d)   any outstanding code violation
        e)   unpaid excessive consumption bill

    2.   We will exercise discretion on sending Notice of Intent to Revoke

        a)   Not when tenant caused

                Except repeating tenant caused

                Or because landlord not responsive

        b)   Because of staffing limitations, we will prioritize based on numerosity of problems and severity of problems.

            Priority List

            i)    Tenant health and safety
            ii)   Problem Property
            iii)  Dilapidation
            iv)   Garbage/Rubbish

    3.   After sending the Notice of Intent to Revoke, the landlord will be given the opportunity to come up with an acceptable abatement plan prior to the City Council taking action on the revocation.

    4.   The Notice of Intent to Revoke is appealable to the City Coouncil's Legislative Hearing officer.

    5.   The ordinance allows us to demand an interior inspection of a single family or duplex rental property whenever excessive consumption has occurred or rental registration has been revoked.

C.   Landlord Notice

    1.   Inspectors should notify owners at all appropriate points in the process of the possibility of reinspection fees. Each time an inspector reinspects a property and finds non-compliance of an order, they should send out a letter to the owner stating that a reinspection was made and the violations still exist.

    2.   Always attempt to notify landlord in advance of interior inspection. (If they are in rental registration). Except that when it's a tenant requested inspection (as opposed to an excessive consumption triggered inspection), we will not notify the landlord in advance because of data privacy issues.

    3.   Always attempt to notify landlord once official problem property.

    4.   Allow 2 extra days for mail delivery regarding compliance deadlines
        Except when emergency
        Except when verbal personal notice given

040103

### IV. B. When Do We Tag

A misdemeanor criminal tag can have serious penalties, up to $1,000 fine and 90 days in jail. The St. Paul City Attorney and the Ramsey County District Court have agreed to treat our tags as serious offenses. In part V. there is a "Sanctions Schedule" that the Court will use in our cases.

It is important to remember that even though you may be given a certain amount of time to complete the work from an inspection, you can still be tagged for having the problem in the first place. The Judge may inquire if you have rectified the problem, but you still can be found guilty even though you cleaned it up.

Here are the situations when we will issue a misdemeanor tag:

1.  When there is a prior history of code violations. If this is the second time we've had to write you a correction order or summary abatement within the past 2 years for the same or a similar problem, you may be tagged. If this is the third time we've had to write a correction order or summary abatement in the past 2 years, it doesn't matter if it's the same or a similar thing. If you are a landlord dealing with problem tenants and you are responsive to abatement orders, then you will not receive a tag even if it's a second or third occurrence.*

2.  When there has been non-compliance with a correction order – in the past, we issued a tag; now we will more likely charge excessive consumption instead. But we can do both.

3.  When the violation is serious or egregious and future such problems must be deterred.

4.  When the subject property or another property of your's has been determined to be a "problem property," we will issue tags regardless of past history or compliance. A problem property can be defined as where there are both building maintenance issues and nuisance behavior issues.

5.  When you are caught up in a "sweep." Every so often different neighborhoods will be flyered announcing that we will be doing a "sweep" in a few days. If you don't take care of the problems within the time given for compliance, you will be tagged.

6.  When your neighborhood is part of a community cleanup program and you ignore your neighbors request to voluntarily cleanup. (Good Neighbor Program, etc.)

7.  Other specific situations that result in tags: we also issue tags for other violations of the city's legislative code, such as
    a)  occupancy of a condemned building and/or occupying a vacant registered building
    b)  allowing occupancy of a condemned building
    c)  failure to register residential rental buildings with 1 or 2 units
    d)  failure to post ownership notice
    e)  failure to pay the annual vacant building fee

---

* It is a landlord's defense to a misdemeanor tag if the landlord proves:
   a.  There is a written lease provision that requires tenants to follow the provisions of state and local laws related to housing codes; and
   b.  The landlord effectively communicated such a provision to the tenants; and
   c.  The landlord took reasonable steps to discover any violations caused by the tenants; and
   d.  The landlord effectively enforced the lease provisions when violations were discovered.

040110

**IV. C. What are       (1) Corrections Orders/Correction Notices**
**(2) Work Orders**
**(3) Summary Abatement Orders**
**(4) Preauthorized Work Orders**
**(5) Emergency Abatement Procedures**

There are occasions when we will issue oral orders for minor problems. However, if this doesn't result in compliance then a tag or summary abatement will likely be the next step because you have already been put on notice.

(1)      A correction order or correction notice is different from a work order because a correction order cannot result in the city coming out and doing the work if you don't. Correction orders are issued when the problem to be addressed is not abateable under the legislative code. A correction order can result in a tag or an excessive consumption bill if non-compliance.

(2)      A work order is when the violation is abateable under the legislative code and constitutes a nuisance. The City will send a crew out to do the work for you at the end of the compliance time line if you haven't done it yourself. The city charges for this service. Work orders are most often issued at the time of re-inspection from an abatement order.

*(3)*      A summary abatement order is the first notice given to the property owner to abate the nuisance violation. Failure to comply will result in a work order.

(4)      A "pre-authorized work order" is when there will be no re-inspection. The city work crew is told to go to the property on the first day after the compliance period expires and do the work if it hasn't been done. Generally, a preauthorized work order is used whenever we issue summary abatements for tall grass/ weeds or snow/ice.

(5)      Emergency Abatement Procedures allow us to take immediate action when there are critically dangerous conditions on private property, which, if not abated immediately, pose a serious threat to the health, safety and well-being of the community. A list of some of these conditions appear on our time lines page where we allow zero time to comply. The property owner is given the choice to take immediate action or have the city take immediate action.

## IV. D. When Do We Give Extensions

An extension can be granted when there has been a good faith attempt to comply with the correction order, but circumstances beyond your control have kept you from completing the work. An extension may also be granted when you have made substantial progress on completing the work.

Common reasons for granting an extension include:

(1)   Inability to comply due to health reasons or other family emergencies and you have a reasonable alternative plan for getting the work done.
(2)   Inability to comply due to the weather.
(3)   You've hired a contractor but the contractor has had a delay.  We may give a short reasonable extension for this reason upon verification from the contractor confirming the delay.
(4)   Inability to comply due to lack of financial resources. We may give a short reasonable extension for this reason but only upon a reasonable belief that your financial situation will improve in the near future and a written agreement between the violator and inspector.  A tag will be issued if non compliant at the end of the extension.

Common reasons for not granting an extension:

(1)   severity of the violation.
(2)   initial time was ample.
(3)   length of time owner knew of the violation.
(4)   history of property.
(5)   the effect on other agencies.
(6)   unlikely owner will comply even with extension.

All extensions must be in writing and the reason for the extension must appear in the "Inspector's notes" section of the inspection report.

## IV. E. When Do We Deviate From These Rules

We will rarely, if ever, deviate on these rules. Time line extensions are not considered a deviation; we will grant extensions in accordance with extensions policy. A deviation is not tagging when these rules indicate a tag should be issued or starting with a different time line than these rules indicate.

The reason for any deviation on the time lines must be entered in the "inspector's notes" section of inspection report and reported to inspector's supervisor.

We will occasionally deviate on when we tag, when we do summary abatements and when we charge excessive consumption. Again, the reason for any deviation must be included in "inspector's notes" and reported to supervisor.

If supervisory staff notice that we are having a significant amount of deviations, this may indicate that the rules need to be adjusted to reflect the circumstances of why we we're deviating so much.

### IV. F. When Do We Do "Field Finds"

A "field find" is when the inspector comes across a code violation while he/she is on another assignment.  It is impossible to write up every "field find" because we will never get to our assigned work.  The amount of "field finds" we write up depends upon our work load.  If we have time to write up a "field find" we will.  However, we will <u>always</u> write-up field finds when it is a dangerous condition, or serious situation, or a problem property, and we will usually write up "field finds" when there is a prior history of violations.

"Field finds" are also typical when we are on an inspection and we see the very same problem next-door or near by.

Of course, when we do a "sweep" or when your neighborhood is part of a community clean-up program, then everything we find is written up.

040114

### IV. G. When Do We Condemn A Building

Whenever a structure is deemed dangerous or unfit for human habitation, we will order the structure vacated, sometimes immediately, but usually after a short compliance period has expired and the occupants are given 1 to 30 days to find alternative shelter. Condemnation occurs when life-safety violations exist, such as fire hazards, unsanitary conditions, severe rodent and pest infestation, lack of basic facilities, faulty construction or dilapidation.

If principal violations are corrected prior to the vacation date, the order to vacate will be lifted.

If principal violations are corrected after the vacate date, once corrected the dwelling can be reoccupied.

### IV. H. When do we bring a TRA (Tenant Remedy Action) Case

A TRA may be brought in District Court in the case of landlord - tenant properties where the following conditions have been met:

1.   An inspection has been made,
2.   The time granted in the repair order has expired, and
3.   Satisfactory repairs to remove the violations have not been made.

Another factor to look at is whether we have attempted to gain compliance through a tag. If we have tagged a property with no success, we should think about using a TRA to gain compliance. The point is that we should use TRAs to gain compliance on the properties that have caused long standing frustration to inspectors and to force landlords to make necessary repairs.

We should also use the TRA strategy as an alternative to condemnation and ordering tenants to vacate. Whenever you have a landlord-tenant property heading towards condemnation or actually condemned a TRA case will be considered.

Some of the additional criteria our office will consider in deciding whether to pursue a TRA action include the following:

•   Does the property present a livability issue to the City?

•   Does the condition of the property have a negative impact on the residents of the property or the neighborhood?

•   Have neighbors or neighborhood groups complained about the property?

•   Does the property present a health and safety issue?

•   Does the owner have a history of violations, consistently fail to remedy violations, or own other problem properties in the City?

Remember there is no requirements that all of these criteria be present at any given time—only that one or more of these criteria are present and then the property can be considered and looked at more closely to determine whether a TRA is appropriate.

## V. Sanction Schedule

| HOUSING COURT SANCTION SCHEDULE | |
| --- | --- |
| **Offense** | **Recommended Sentence** |
| 1st Offense<br>no priors w/in 3 years<br>Compliance before arraignment | Agreement to Suspend Prosecution (ATSP)<br>$60.00 court costs<br>$40.00 prosecution surcharge |
| 1st Offense<br>no priors w/in 3 years<br>No compliance before court | ATSP<br>Comply w/in 30 days<br>$100.00 court costs<br>$100.00 surcharge |
| 1st Offense<br>no priors<br>no compliance by court ordered return date | Above ATSP vacated<br>Misdemeanor: 90 days and $1,000<br>$300.00 fine |
| 2nd Offense<br>1 prior w/in 3 years<br>Compliance before arraignment | Misdemeanor w/Stay of Imposition<br>$200.00 fine No same or similar |
| 2nd Offense w/in 3 years<br>No compliance before arraignment | Misdemeanor w/Stay of Imposition<br>Compliance w/in 30 days<br>No s/s $400.00 fine |
| 2nd Offense w/in 3 years<br>No compliance by return date | Misdemeanor 90 days and $1,000<br>$500.00 |
| 3rd Offense w/in 3 years | Misdemeanor 90 days and $1,000<br>$700.00 fine plus jail time<br>Community Impact Panel |

# RRInfo

Information from Ramsey County's Department of Property Records & Revenue

| RRInfo Home | Tips | What's New | Tax & Property Characteristic | Recorded Document | Contact Us | Logout |
|---|---|---|---|---|---|---|

**Tax & Property Characteristic Information**

New Property Search > Property Search Results  Note: Click on a PIN (Property

ID#) to continue

| PIN (Property ID#) | Number | Street Address | City | Name |
|---|---|---|---|---|
| 01.28.23.12.0143 | 325 | Laurel Ave | St. Paul | Public Housing Agency |
| 01.28.23.22.0210 | 590 | Laurel Ave | St. Paul | Public Housing Agency |
| 01.28.23.34.0036 | 418 | Banfil St | St. Paul | Public Housing Agency |
| 01.28.23.34.0139 | 458 | Goodhue St | St. Paul | Public Housing Agency |
| 02.28.22.21.0092 | 105 | Ruth St N | St. Paul | Public Housing Agency |
| 02.28.22.23.0074 | 18 | White Bear Ave N | St. Paul | Public Housing Agency |
| 02.28.22.44.0097 | 2213 | Glenridge Ave | St. Paul | Public Housing Agency |
| 02.28.23.11.0001 | 221 | Dale St N | St. Paul | Public Housing Agency |
| 02.28.23.11.0226 | 728 | Hague Ave | St. Paul | Public Housing Agency |
| 02.28.23.11.0266 | 654 | Hague Ave | St. Paul | Public Housing Agency |
| 02.28.23.12.0015 | 771 | Dayton Ave | St. Paul | Public Housing Agency |
| 02.28.23.12.0080 | 782 | Dayton Ave | St. Paul | Public Housing Agency |
| 02.28.23.12.0124 | 773 | Hague Ave | St. Paul | Public Housing Agency |
| 02.28.23.12.0189 | 809 | Laurel Ave | St. Paul | Public Housing Agency |
| 02.28.23.13.0017 | 789 | Ashland Ave | St. Paul | Public Housing |

040118

|  |  |  |  | Paul | Agency |
| --- | --- | --- | --- | --- | --- |
| 02.28.23.21.0001 | 868 | Marshall Ave | St. Paul | Public Housing Agency |
| 02.28.23.21.0037 | 908 | Dayton Ave | St. Paul | Public Housing Agency |
| 02.28.23.21.0085 | 904 | Hague Ave | St. Paul | Public Housing Agency |
| 02.28.23.21.0106 | 940 | Marshall Ave | St. Paul | Public Housing Agency |
| 02.28.23.21.0135 | 948 | Dayton Ave | St. Paul | Public Housing Agency |
| 02.28.23.22.0068 | 1088 | Dayton Ave | St. Paul | Public Housing Agency |
| 02.28.23.22.0139 | 1082 | Hague Ave | St. Paul | Public Housing Agency |
| 02.28.23.23.0030 | 1012 | Ashland Ave | St. Paul | Public Housing Agency |
| 03.28.22.12.0056 | 228 | Sigurd St | St. Paul | Public Housing Agency |
| 03.28.22.14.0073 | 1749 | Grace Ln | St. Paul | Public Housing Agency |
| 03.28.22.21.0028 | 1536 | Upper Afton Rd | St. Paul | Public Housing Agency |
| 03.28.23.11.0103 | 1117 | Selby Ave | St. Paul | Public Housing Agency |
| 03.28.23.12.0133 | 1247 | Hague Ave | St. Paul | Public Housing Agency |
| 03.28.23.24.0080 | 1440 | Laurel Ave | St. Paul | Public Housing Agency |
| 03.28.23.43.0030 | 1232 | Goodrich Ave | St. Paul | Public Housing Agency |

Prev Page

Page 1: Results 1 to 30 of 390
1 2 3 4 5 6 7 8 9 10 11 12 13

Next Page



Database Last Refreshed  05-13-2004
Copyright 2003 Ramsey County
Email: RRInfoTechSupport@co.ramsey.mn.us

040119

# RRInfo

Information from Ramsey County's Department of Property
Records & Revenue

| RRInfo Home | Tips | What's New | Tax & Property Characteristic | Recorded Document | Contact Us | Logout |

---

## Tax & Property Characteristic Information

New Property Search > Property Search Results    Note: Click on a PIN (Property

ID#) to continue

| PIN (Property ID#) | Number | Street Address | City | Name |
|---|---|---|---|---|
| 03.28.23.43.0079 | 1227 | Osceola Ave | St. Paul | Public Housing Agency |
| 03.28.23.44.0074 | 1140 | Osceola Ave | St. Paul | Public Housing Agency |
| 04.28.23.11.0138 | 1690 | Marshall Ave | St. Paul | Public Housing Agency |
| 04.28.23.12.0031 | 1720 | Selby Ave | St. Paul | Public Housing Agency |
| 04.28.23.12.0098 | 1737 | Laurel Ave | St. Paul | Public Housing Agency |
| 04.28.23.14.0104 | 1684 | Laurel Ave | St. Paul | Public Housing Agency |
| 04.28.23.23.0003 | 110 | Cleveland Ave N | St. Paul | Public Housing Agency |
| 04.28.23.24.0049 | 1823 | Ashland Ave | St. Paul | Public Housing Agency |
| 04.28.23.34.0173 | 205 | Fairview Ave S | St. Paul | Public Housing Agency |
| 05.28.23.44.0053 | 193 | Cleveland Ave S | St. Paul | Public Housing Agency |
| 07.28.22.11.0117 | 50 | Congress St W | St. Paul | Public Housing Agency |
| 07.28.22.12.0029 | 435 | Bidwell St | St. Paul | Public Housing Agency |
| 07.28.22.13.0110 | 212 | Stevens St W | St. Paul | Public Housing Agency |
| 07.28.22.14.0099 | 112 | Stevens St W | St. Paul | Public Housing Agency |
| 07.28.22.42.0109 | 166 | Sidney St W | St. | Public Housing |

040120

| | | | Paul | Agency |
|---|---|---|---|---|
| 07.28.22.44.0066 | 836 | Hall Ave | St. Paul | Public Housing Agency |
| 08.28.22.12.0094 | 224 | Winifred St E | St. Paul | Public Housing Agency |
| 08.28.22.12.0107 | 175 | Congress St E | St. Paul | Public Housing Agency |
| 08.28.22.13.0074 | 310 | Robie St E | St. Paul | Public Housing Agency |
| 08.28.22.21.0068 | 469 | Ada St | St. Paul | Public Housing Agency |
| 08.28.22.24.0052 | 550 | Robert St S | St. Paul | Public Housing Agency |
| 08.28.22.31.0059 | 210 | Page St E | St. Paul | Public Housing Agency |
| 08.28.22.31.0143 | 132 | Page St E | St. Paul | Public Housing Agency |
| 08.28.22.32.0012 | 35 | Baker St E | St. Paul | Public Housing Agency |
| 08.28.22.32.0072 | 715 | Humboldt Ave | St. Paul | Public Housing Agency |
| 08.28.22.33.0002 | 71 | Curtice St E | St. Paul | Public Housing Agency |
| 08.28.22.33.0008 | 74 | Curtice St E | St. Paul | Public Housing Agency |
| 08.28.22.33.0011 | | Unassigned | St. Paul | Public Housing Agency |
| 08.28.22.33.0012 | 755 | Livingston Ave | St. Paul | Public Housing Agency |
| 08.28.22.34.0097 | 144 | Winona St E | St. Paul | Public Housing Agency |



Database Last Refreshed  05-13-2004
Copyright 2003 Ramsey County
Email: RRInfoTechSupport@co.ramsey.mn.us

040121

## RRInfo
Information from Ramsey County's Department of Property Records & Revenue

| RRInfo Home | Tips | What's New | Tax & Property Characteristic | Recorded Document | Contact Us | Logout |
|---|---|---|---|---|---|---|

**Tax & Property Characteristic Information**

New Property Search > Property Search Results  Note: Click on a PIN (Property ID#) to continue

| PIN (Property ID#) | Number | Street Address | City | Name |
|---|---|---|---|---|
| 08.28.22.34.0155 | 139 | Annapolis St E | St. Paul | Public Housing Agency |
| 08.28.22.41.0074 | 712 | Andrew St | St. Paul | Public Housing Agency |
| 08.28.22.42.0163 | 284 | Sidney St E | St. Paul | Public Housing Agency |
| 08.28.22.42.0186 | 331 | Page St E | St. Paul | Public Housing Agency |
| 08.28.22.43.0061 | 327 | Wyoming St E | St. Paul | Public Housing Agency |
| 08.28.23.14.0108 | 415 | Cleveland Ave S | St. Paul | Public Housing Agency |
| 08.28.23.43.0112 | 2197 | Eleanor Ave | St. Paul | Public Housing Agency |
| 08.28.23.44.0120 | 2081 | Eleanor Ave | St. Paul | Public Housing Agency |
| 09.28.23.13.0097 | 1740 | Juliet Ave | St. Paul | Public Housing Agency |
| 09.28.23.14.0008 | 1601 | Juliet Ave | St. Paul | Public Housing Agency |
| 09.28.23.22.0207 | 2040 | Wellesley Ave | St. Paul | Public Housing Agency |
| 09.28.23.24.0182 | 1885 | James Ave | St. Paul | Public Housing Agency |
| 09.28.23.41.0050 | 1620 | Niles Ave | St. Paul | Public Housing Agency |
| 10.28.23.14.0151 | 1153 | Randolph Ave | St. Paul | Public Housing Agency |
| 10.28.23.21.0201 | 1428 | Wellesley Ave | St. | Public Housing |

040123

|  |  |  |  | Paul | Agency |
|---|---|---|---|---|---|
| 10.28.23.32.0047 | 555 | Warwick St | St. Paul | Public Housing Agency |
| 10.28.23.32.0094 | 498 | Brimhall St | St. Paul | Public Housing Agency |
| 10.28.23.33.0153 | 1475 | Highland Pky | St. Paul | Public Housing Agency |
| 10.28.23.34.0125 | 1419 | Bayard Ave | St. Paul | Public Housing Agency |
| 10.28.23.42.0153 | 1271 | Watson Ave | St. Paul | Public Housing Agency |
| 10.28.23.43.0032 | 1312 | Hartford Ave | St. Paul | Public Housing Agency |
| 10.28.23.43.0070 | 1269 | Scheffer Ave | St. Paul | Public Housing Agency |
| 11.28.23.11.0016 | 311 | Toronto St | St. Paul | Public Housing Agency |
| 11.28.23.11.0087 | 325 | Arbor St | St. Paul | Public Housing Agency |
| 11.28.23.12.0005 | 761 | Jefferson Ave | St. Paul | Public Housing Agency |
| 11.28.23.14.0160 | 717 | Randolph Ave | St. Paul | Public Housing Agency |
| 11.28.23.21.0062 | 273 | Deubener Pl | St. Paul | Public Housing Agency |
| 11.28.23.24.0156 | 868 | James Ave | St. Paul | Public Housing Agency |
| 11.28.23.31.0035 | 894 | Juno Ave | St. Paul | Public Housing Agency |
| 11.28.23.31.0093 | 902 | Watson Ave | St. Paul | Public Housing Agency |

Prev Page    Page 3: Results 61 to 90 of 390
1 2 3 4 5 6 7 8 9 10 11 12 13    Next Page



Database Last Refreshed 05-13-2004
Copyright 2003 Ramsey County
Email: RRInfoTechSupport@co.ramsey.mn.us

040133

# RRInfo
Information from Ramsey County's Department of Property Records & Revenue

| RRInfo Home | Tips | What's New | Tax & Property Characteristic | Recorded Document | Contact Us | Logout |

---

**Tax & Property Characteristic Information**

New Property Search > Property Search Results  Note: Click on a PIN (Property ID#) to continue

| PIN (Property ID#) | Number | Street Address | City | Name |
|---|---|---|---|---|
| 11.28.23.31.0174 | 538 | Chatsworth St S | St. Paul | Public Housing Agency |
| 11.28.23.33.0078 | 1003 | Eleanor Ave | St. Paul | Public Housing Agency |
| 11.28.23.34.0039 | 974 | Tuscarora Ave | St. Paul | Public Housing Agency |
| 11.28.23.41.0149 | 682 | Watson Ave | St. Paul | Public Housing Agency |
| 12.28.23.41.0062 | 734 | Chippewa Ave | St. Paul | Public Housing Agency |
| 14.28.23.22.0129 | 1032 | Otto Ave | St. Paul | Public Housing Agency |
| 14.28.23.23.0002 | 1085 | Montreal Ave | St. Paul | Public Housing Agency |
| 15.28.23.11.0019 | 803 | Lexington Pky S | St. Paul | Public Housing Agency |
| 15.28.23.34.0017 | 2190 | 7th St W | St. Paul | Public Housing Agency |
| 15.28.23.41.0087 | 1833 | Ivan Way | St. Paul | Public Housing Agency |
| 16.28.23.11.0057 | 1653 | Ford Pky | St. Paul | Public Housing Agency |
| 16.28.23.23.0129 | 1957 | Rome Ave | St. Paul | Public Housing Agency |
| 16.28.23.32.0109 | 2 | Villard Ct | St. Paul | Public Housing Agency |
| 16.28.23.33.0038 | 1954 | Dorothea Ave | St. Paul | Public Housing Agency |
| 16.28.23.33.0092 | 2025 | Thure Ave | St. | Public Housing |

040124

| | | | | |
|---|---|---|---|---|
| | | | Paul | Agency |
| 16.28.23.33.0183 | 1095 | St Paul Ave | St. Paul | Public Housing Agency |
| 16.28.23.34.0107 | 1898 | Dorothea Ave | St. Paul | Public Housing Agency |
| 16.28.23.34.0127 | 1130 | St Paul Ave | St. Paul | Public Housing Agency |
| 16.28.23.42.0028 | 1812 | Yorkshire Ave | St. Paul | Public Housing Agency |
| 16.28.23.42.0043 | 1738 | Montreal Ave | St. Paul | Public Housing Agency |
| 17.28.23.11.0063 | 2162 | Pinehurst Ave | St. Paul | Public Housing Agency |
| 17.28.23.14.0004 | 899 | Cleveland Ave S | St. Paul | Public Housing Agency |
| 17.28.23.41.0049 | 1067 | Bowdoin St | St. Paul | Public Housing Agency |
| 17.28.23.44.0025 | 1363 | Colby Ave | St. Paul | Public Housing Agency |
| 19.29.22.14.0053 | 1543 | Westminster St | St. Paul | Public Housing Agency |
| 19.29.22.22.0096 | 65 | Hoyt Ave W | St. Paul | Public Housing Agency |
| 19.29.22.32.0036 | 1408 | Park St | St. Paul | Public Housing Agency |
| 19.29.22.33.0030 | 1285 | Park St | St. Paul | Public Housing Agency |
| 19.29.22.41.0010 | 1385 | Westminster St | St. Paul | Public Housing Agency |
| 20.29.22.12.0001 | 1676 | Payne Ave | St. Paul | Public Housing Agency |

Prev Page                  Page 4: Results 91 to 120 of 390                  Next Page
                              1 2 3 4 5 6 7 8 9 10 11 12 13



Database Last Refreshed  05-13-2004
Copyright 2003 Ramsey County
Email: RRInfoTechSupport@co.ramsey.mn.us

040125

# RRInfo
Information from Ramsey County's Department of Property Records & Revenue

| RRInfo Home | Tips | What's New | Tax & Property Characteristic | Recorded Document | Contact Us | Logout |

---

## Tax & Property Characteristic Information

New Property Search > Property Search Results    Note: Click on a PIN (Property ID#) to continue

| PIN (Property ID#) | Number | Street Address | City | Name |
|---|---|---|---|---|
| 20.29.22.21.0005 | 489 | Idaho Ave E | St. Paul | Public Housing Agency |
| 20.29.22.21.0040 | 540 | Larpenteur Ave E | St. Paul | Public Housing Agency |
| 20.29.22.22.0002 | 1676 | Westminster St | St. Paul | Public Housing Agency |
| 20.29.22.23.0033 | 434 | Hoyt Ave E | St. Paul | Public Housing Agency |
| 20.29.22.23.0081 | 1505 | Arkwright St | St. Paul | Public Housing Agency |
| 20.29.22.23.0089 | 1480 | Westminster St | St. Paul | Public Housing Agency |
| 20.29.22.34.0044 | 504 | Ivy Ave E | St. Paul | Public Housing Agency |
| 20.29.22.34.0059 | 1222 | Desoto St | St. Paul | Public Housing Agency |
| 20.29.22.34.0075 | 492 | Brainerd Ave | St. Paul | Public Housing Agency |
| 20.29.22.42.0058 | 659 | Sherwood Ave | St. Paul | Public Housing Agency |
| 20.29.22.43.0006 | 1294 | Edgerton St | St. Paul | Public Housing Agency |
| 20.29.22.43.0103 | 698 | Ivy Ave E | St. Paul | Public Housing Agency |
| 20.29.22.44.0016 | 789 | Hyacinth Ave E | St. Paul | Public Housing Agency |
| 21.28.23.21.0031 | 1265 | St Paul Ave | St. Paul | Public Housing Agency |
| 21.28.23.21.0071 | 1884 | Worcester Ave | St. Paul | Public Housing |

040126

| | | | | |
|---|---|---|---|---|
| | | | Paul | Agency |
| 21.28.23.23.0008 | 1364 | Sumner St | St. Paul | Public Housing Agency |
| 21.28.23.24.0071 | 1914 | Sheridan Ave | St. Paul | Public Housing Agency |
| 21.29.22.11.0018 | 1664 | Chamber St | St. Paul | Public Housing Agency |
| 21.29.22.11.0160 | 1570 | Chamber St | St. Paul | Public Housing Agency |
| 21.29.22.32.0050 | 876 | Sherwood Ave | St. Paul | Public Housing Agency |
| 21.29.22.32.0074 | 1403 | Forest St | St. Paul | Public Housing Agency |
| 21.29.22.33.0010 | 896 | Ivy Ave E | St. Paul | Public Housing Agency |
| 21.29.22.44.0031 | 1223 | Maryland Ave E | St. Paul | Public Housing Agency |
| 22.28.23.23.0044 | 2417 | Youngman Ave | St. Paul | Public Housing Agency |
| 22.29.22.11.0027 | 1725 | Idaho Ave E | St. Paul | Public Housing Agency |
| 22.29.22.11.0036 | 1743 | Iowa Ave E | St. Paul | Public Housing Agency |
| 22.29.22.11.0046 | 1721 | Hoyt Ave E | St. Paul | Public Housing Agency |
| 22.29.22.11.0104 | 1686 | Idaho Ave E | St. Paul | Public Housing Agency |
| 22.29.22.13.0088 | 1621 | Arlington Ave E | St. Paul | Public Housing Agency |
| 22.29.22.13.0127 | 1562 | Montana Ave E | St. Paul | Public Housing Agency |



Database Last Refreshed  05-13-2004
Copyright 2003 Ramsey County
Email: RRInfoTechSupport@co.ramsey.mn.us

040127

# RRInfo

Information from Ramsey County's Department of Property
Records & Revenue

| RRInfo Home | Tips | What's New | Tax & Property Characteristic | Recorded Document | Contact Us | Logout |

**Tax & Property Characteristic Information**

New Property Search > Property Search Results        Note: Click on a PIN (Property

ID#) to continue

| PIN (Property ID#) | Number | Street Address | City | Name |
|---|---|---|---|---|
| 22.29.22.14.0152 | 1716 | Nevada Ave E | St. Paul | Public Housing Agency |
| 22.29.22.22.0087 | 1616 | Mcafee St | St. Paul | Public Housing Agency |
| 22.29.22.23.0144 | 1449 | Clarence St | St. Paul | Public Housing Agency |
| 22.29.22.31.0043 | 1398 | Barclay St | St. Paul | Public Housing Agency |
| 22.29.22.32.0047 | 1396 | Arlington Ave E | St. Paul | Public Housing Agency |
| 22.29.22.33.0047 | 1279 | Etna St | St. Paul | Public Housing Agency |
| 22.29.22.41.0025 | 1765 | Sherwood Ave | St. Paul | Public Housing Agency |
| 22.29.22.41.0120 | 1686 | Sherwood Ave | St. Paul | Public Housing Agency |
| 22.29.22.42.0086 | 1540 | Sherwood Ave | St. Paul | Public Housing Agency |
| 22.29.22.44.0026 | 1268 | Breen St | St. Paul | Public Housing Agency |
| 22.29.23.12.0044 | 1265 | Idaho Ave W | St. Paul | Public Housing Agency |
| 22.29.23.13.0019 | 1510 | Huron St | St. Paul | Public Housing Agency |
| 22.29.23.23.0012 | 1504 | Snelling Ave N | St. Paul | Public Housing Agency |
| 23.29.22.21.0020 | 1676 | Luella St N | St. Paul | Public Housing Agency |
| 23.29.22.21.0024 | 1636 | Luella St N | St. | Public Housing |

040123

| | | | | |
|---|---|---|---|---|
| | | | Paul | Agency |
| 23.29.22.21.0104 | 1997 | Hoyt Ave E | St. Paul | Public Housing Agency |
| 23.29.22.22.0090 | 1876 | Iowa Ave E | St. Paul | Public Housing Agency |
| 23.29.22.24.0026 | 1900 | Hoyt Ave E | St. Paul | Public Housing Agency |
| 23.29.22.32.0101 | 1869 | Cottage Ave E | St. Paul | Public Housing Agency |
| 23.29.22.33.0121 | 1822 | Hyacinth Ave E | St. Paul | Public Housing Agency |
| 23.29.22.42.0117 | 2123 | Clear Ave | St. Paul | Public Housing Agency |
| 23.29.22.43.0004 | 2118 | Ivy Ave E | St. Paul | Public Housing Agency |
| 23.29.22.44.0043 | 2255 | Tilsen Ave | St. Paul | Public Housing Agency |
| 23.29.23.12.0097 | 852 | California Ave W | St. Paul | Public Housing Agency |
| 23.29.23.12.0110 | 807 | Idaho Ave W | St. Paul | Public Housing Agency |
| 23.29.23.12.0130 | 806 | Iowa Ave W | St. Paul | Public Housing Agency |
| 23.29.23.14.0017 | 1556 | Alameda St | St. Paul | Public Housing Agency |
| 23.29.23.14.0107 | 1491 | Alameda St | St. Paul | Public Housing Agency |
| 23.29.23.21.0042 | 1667 | Victoria St N | St. Paul | Public Housing Agency |
| 23.29.23.24.0147 | 977 | Nevada Ave W | St. Paul | Public Housing Agency |



Database Last Refreshed  05-13-2004
Copyright 2003 Ramsey County
Email: RRInfoTechSupport@co.ramsey.mn.us

040129

# RRInfo Information from Ramsey County's Department of Property
## Records & Revenue

| RRInfo Home | Tips | What's New | Tax & Property Characteristic | Recorded Document | Contact Us | Logout |

---

### Tax & Property Characteristic Information

---

New Property Search > Property Search Results  Note: Click on a PIN (Property

ID#) to continue

| PIN (Property ID#) | Number | Street Address | City | Name |
|---|---|---|---|---|
| 23.29.23.44.0093 | 1259 | St Albans St N | St. Paul | Public Housing Agency |
| 24.29.23.11.0048 | 1565 | Marion St | St. Paul | Public Housing Agency |
| 24.29.23.12.0029 | 1569 | Virginia St | St. Paul | Public Housing Agency |
| 24.29.23.23.0069 | 1500 | Danforth St | St. Paul | Public Housing Agency |
| 24.29.23.32.0123 | 1361 | Danforth St | St. Paul | Public Housing Agency |
| 24.29.23.33.0037 | 1290 | Kent St | St. Paul | Public Housing Agency |
| 24.29.23.33.0087 | 551 | Hawthorne Ave W | St. Paul | Public Housing Agency |
| 24.29.23.33.0131 | 1240 | Dale St N | St. Paul | Public Housing Agency |
| 24.29.23.41.0036 | 1422 | Woodbridge St | St. Paul | Public Housing Agency |
| 24.29.23.42.0019 | 290 | Arlington Ave W | St. Paul | Public Housing Agency |

0401.30

| | | | | |
|---|---|---|---|---|
| 24.29.23.42.0063 | 264 | Cottage Ave W | St. Paul | Public Housing Agency |
| 24.29.23.43.0017 | 1286 | Matilda St | St. Paul | Public Housing Agency |
| 24.29.23.43.0058 | 1271 | Farrington St | St. Paul | Public Housing Agency |
| 24.29.23.44.0026 | 1319 | Albemarle St | St. Paul | Public Housing Agency |
| 25.29.23.11.0016 | 1181 | Albemarle St | St. Paul | Public Housing Agency |
| 25.29.23.12.0090 | 1129 | Galtier St | St. Paul | Public Housing Agency |
| 25.29.23.13.0048 | 1047 | Matilda St | St. Paul | Public Housing Agency |
| 25.29.23.14.0049 | 1012 | Albemarle St | St. Paul | Public Housing Agency |
| 25.29.23.21.0074 | 1116 | Arundel St | St. Paul | Public Housing Agency |
| 25.29.23.24.0023 | 1075 | Norton St | St. Paul | Public Housing Agency |
| 25.29.23.24.0068 | 1047 | Arundel St | St. Paul | Public Housing Agency |
| 25.29.23.24.0110 | 434 | Lawson Ave W | St. Paul | Public Housing Agency |
| 25.29.23.41.0242 | 855 | Albemarle St | St. Paul | Public Housing Agency |
| 25.29.23.41.0245 | 861 | Albemarle St | St. Paul | Public Housing Agency |
| 25.29.23.42.0208 | 340 | Topping St | St. Paul | Public Housing |

040131